IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICHELLE BLOOTHOOFD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | C.A. Nos. 09-179-SLR, 10-868-SLR |
| | ) | (Consolidated) |
| CARL DANBERG, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND AGREEMENT

It is hereby agreed this _____ day of _____, 2011, (the "Effective Date") pursuant to the agreement of the parties and the Department of Correction ("DOC") that DOC shall be deemed to have accepted, and will comply with, the following policies regarding the prevention of sexual abuse, which includes any sexual activity between any employee of DOC or DOC contractor or vendor ("personnel") and any inmate, and any unwanted, forced, or otherwise coerced sexual activity between inmates (collectively, "SA"), as part of its standard operational policies. DOC further agrees that unless otherwise stated herein, these policies will be fully implemented within one year of the execution of this Order and Agreement.

This Agreement is entered into by DOC as part of an amicable settlement of disputed claims brought by the plaintiff in her lawsuit. DOC contested the claims in the lawsuit, and the named defendants raised various affirmative defenses to liability. In entering into this Agreement, DOC makes no admissions, and continues to dispute the allegations in the lawsuit. The Agreement reflects numerous actions already taken by DOC, and policies and procedures already implemented at the Baylor Women's Correctional Institution ("BWCI"). To the extent that this Agreement requires compliance with regulations to be issued pursuant to the Prison Rape Elimination Act ("PREA"), the parties recognize that it is the obligation of DOC to comply with those regulations, as issued, and as subsequently amended. To the extent that compliance with provisions of the Agreement would violate the regulations, the regulations control.

I.  <u>CULTURE</u>

1.  **Adopt and enforce a written Zero Tolerance of Sexual Abuse policy** [PP-1],[1] which shall include SA prevention, detection, and response policies and procedures and which shall be applicable to all DOC correctional institutions.  DOC shall take steps to advise all personnel of the policy.

2.  **Prevention of Sexual Abuse Coordinator.**  BWCI will designate a prevention of sexual abuse coordinator ("PREA coordinator") to develop, implement, and oversee, subject to direction by the Warden, DOC efforts to comply with this Order and Agreement and all mandates under the forthcoming Prison Rape Elimination Act regulations.  [PP-1]  The PREA Coordinator shall be at the level of Lieutenant or higher. The PREA Coordinator shall be responsible for keeping data pursuant to this Agreement, and for making recommendations of constructive ways to use the information to enhance the security and safety of BWCI [MR 24] [2] to the Warden.

3.  **Institutional Changes.**

    a.  BWCI and DOC shall continue to develop a departmental and institutional strategy plan for BWCI that provides a unified mission and vision for effective work with female offenders.  [MR 51]

    b.  DOC and BWCI shall adopt a policy statement for working with women offenders based on acknowledged national gender responsive principles and standards.  [MR 12]

    c.  DOC shall maintain the following institutional changes:

        i.  BWCI shall maintain a formal communication infrastructure as needed to communicate to all personnel information that the PREA Coordinator and staff at BWCI determine should be communicated for the safe and secure operation of BWCI, and shall adopt a procedure to communicate that information to any personnel who are unavoidably unable to attend a communication meeting; [MR 6, 13]

        ii.  BWCI shall maintain an internal quality assurance mechanism whereby supervisory staff can train their staff on effective inmate discipline, and which provides formal ways to document staff decisions and changes to decisions and to notify staff and inmates of the changes; [MR 37]

---

[1]   References to "PP, RP, TR, SC, RE, OR, IN, PI, MM and AU" shall refer to NPREC Standards for the Prevention, Detection, Response, and Monitoring of Sexual Abuse in Adult Prisons and Jails, including Supplemental Standards for Facilities with Immigration Detainees.

[2]   References to "MR" shall refer to the Final Report: PREA Management Assessment, January 27, 2009 prepared by The Moss Group, Inc.

iii. BWCI shall maintain a communication and delegation approach that requires communication of information needed for the safe and secure operation of BWCI and delegation or responsibility and authority always to proceed within the chain of command, except in the case of emergencies where proceeding through the chain of command would jeopardize safety or security; [MR 6]

iv. BWCI shall maintain a practice of a weekly facility walk around by all managers at BWCI with any information to be shared at periodic executive team meetings; [MR 51]

v. BWCI shall maintain  a program of formal staff supervision at BWCI that is documented and includes specific discussions about gender responsive practice, PREA and accompanying staff competencies; [MR 37]

vi. BWCI shall maintain a practice of having Supervisory staff at BWCI regularly provide feedback to line staff regarding specific incidents to enhance staff skill level and to increase consistency; and [MR 27]

vii. BWCI shall maintain an inmate advisory group.  The Inmate Advisory Group shall be chaired by the Warden's designee. [MR 51]

## II.  REPORTING OF INCIDENTS

### 4.  Reporting Sexual Abuse.

a. BWCI will provide multiple internal ways for inmates to easily, privately, and securely report SA, retaliation by other inmates or staff for reporting SA, and staff neglect or violation of responsibilities that may have contributed to an incident of SA. This will include at least one way for inmates to report the abuse to an entity or office outside of BWCI that has agreed to receive reports and forward them to the PREA Coordinator, except when an inmate requests confidentiality.  Personnel at BWCI will accept reports made verbally, in writing, anonymously, and from third parties.  [RE-1]  The multiple internal ways shall include the following:

i. Completing a grievance form in a secure and confidential manner, including by placing it in a locked box that shall be opened on a regular basis and only by the Inmate Grievance Chair.  [MR 25]  Grievance forms shall be available in conspicuous locations in the BWCI library and in each housing unit. [MR 25] Setting forth the report of SA in writing on any piece of paper ("SA Complaint") that the inmate delivers to the inmate's counselor or any other Personnel employed at BWCI;

ii. Orally informing any personnel employed at BWCI.   Any personnel receiving such oral report shall immediately prepare a written document memorializing the oral report (an "SA Report").

3

      iii. Calling a toll free number, which shall be provided in the inmate orientation manual and the grievance policy and posted conspicuously in each housing area, each inmate counselor's office and in the BWCI library, in English and Spanish. An inmate may not be required to enter an SBI number into the telephone to call the toll free number. [MR 10-12, 16-17] All calls to the toll free number shall be recorded in a log, and a copy of the log shall be sent to the PREA Coordinator on a monthly basis.

    b. All reported allegations of sexual abuse at BWCI received by DOC shall be forwarded to the PREA Coordinator and the Warden. DOC will seek to have the Delaware Department of Justice forward all reported allegations of sexual abuse at BWCI to the PREA Coordinator and the Warden.

**5. Protection against retaliation.** DOC will protect all inmates and staff who report sexual abuse or cooperate with sexual abuse investigations from retaliation by other inmates or staff. DOC will employ multiple protection measures, such as housing changes or transfers for inmate victims or abusers, removal of alleged staff or inmate abusers from contact with victims, and emotional support services for inmates or staff who fear retaliation for reporting sexual abuse or cooperating with investigations. DOC will monitor the conduct and/or treatment of inmates or staff who have reported sexual abuse or cooperated with investigations, including any inmate disciplinary reports, housing, or program changes, for at least 90 days following their report or cooperation to see if there are changes that may suggest possible retaliation by inmates or staff. As part of its efforts to determine if retaliation has occurred, DOC will follow up with the inmate. When retaliation is confirmed, DOC shall immediately take steps to protect the inmate or staff member. [OR-5]

**6. Third-party reporting.** DOC will receive and investigate all third-party complaints of sexual abuse, and will maintain records of the disposition of such complaints. DOC will acknowledge receipt of the third party complaint, in writing to the third-party complainant, and will tell the third party complainant, in writing, when the investigation has been completed. DOC will publicly distribute information on how to report sexual abuse on behalf of an inmate. [RE-4]

**7. Staff and facility head reporting duties.** All staff members are required to report immediately to the PREA Coordinator and DOC Internal Affairs any knowledge, suspicion, or information they receive regarding (a) an incident of SA that occurred in an institutional setting; (b) retaliation against inmates or staff who reported alleged SA; and (c) any staff neglect or violation of responsibilities that may have contributed to an incident of alleged SA or retaliation. Apart from reporting to designated supervisors or officials, staff must not reveal any information related to a sexual abuse report to anyone other than those who need to know, as specified in DOC policy, to make treatment, investigation, and other security and management decisions. Except as prohibited by law or by any collective bargaining agreement, the reports, including the reporting staff member's identity, will be confidential. Unless otherwise precluded by Federal, State, or local law, medical and mental health practitioners will be required to report sexual

4

abuse and must inform inmates of their duty to report at the initiation of services.  If the alleged victim is under the age of 18 or an incapacitated person within the meaning of 12 Del. C. § 3982(4), the allegation shall be reported to the Warden, or his or her designee.  [OR-1]

8.    **Reporting to other confinement facilities.**  When one DOC facility receives an allegation that an inmate was sexually abused while confined at another DOC facility, the investigator or Warden of the facility where the report was made will notify, in writing, the investigator or Warden of the facility where the alleged abuse occurred. The investigator or Warden of the facility where the alleged abuse occurred will ensure the allegation is investigated.  [OR-2]

9.    **Inmate Supervision.**  Security staff shall provide the inmates with supervision necessary to protect inmates from SA.

## III.    RESPONSE TO ALLEGATIONS

10.    **Responding to Assertions of Sexual Abuse or Retaliation for Reporting SA.**

a.  Immediately upon receipt of a grievance that asserts SA, retaliation by other inmates or staff for reporting SA, or staff neglect or violation of responsibilities that may have contributed to an incident of SA, the Inmate Grievance Chair shall deliver a copy of the grievance to the PREA Coordinator.  Upon receipt of an SA Complaint, the person who receives it shall deliver a copy to the PREA Coordinator.  Upon preparation of an SA Report, the person who prepares it shall deliver it to the PREA Coordinator.  [MR 24]  Transmittal of the foregoing documents to the PREA Coordinator may be made electronically. The PREA Coordinator shall enter all of the foregoing grievances, SA Complaints and SA Reports into a log.

b.  Within 24 hours of receipt by the Inmate Grievance Chair or the PREA Coordinator, a copy of any grievance relating to claims of SA, retaliation by other inmates or staff for reporting SA, or staff neglect or violation of responsibilities that may have contributed to an incident of SA, shall be delivered to the PREA Coordinator and to DOC Internal Affairs.  [MR 24]

c.  All grievances relating to claims of SA, retaliation by other inmates or staff for reporting SA, and staff neglect or violation of responsibilities that may have contributed to an incident of SA, SA Complaints, SA Reports and information received at the toll free number shall be reviewed by the PREA Coordinator to determine whether physical characteristics of the institution, such as blind spots, staffing, institutional procedure or  policies, or any other factor create a risk that future SA could occur, regardless of whether the reported SA is determined to be substantiated.

11.    **Staff first responder duties.**  Upon learning that an inmate is alleged to have been subjected to SA within a time period that still allows for the collection of physical

evidence, the first security staff member to respond to the report is required to (1) separate the alleged victim and abuser; (2) seal and preserve any crime scene(s); and (3) instruct the victim not to take any actions that could destroy physical evidence, including washing, brushing his or her teeth, changing his or her clothes, urinating, defecating, smoking, drinking, or eating.  If the first staff responder is a non-security staff member, he or she is required to instruct the victim not to take any actions that could destroy physical evidence, and to then notify security staff.  [OR-3]

12. **Coordinated response.**  All actions taken in response to an incident of sexual abuse will be coordinated among staff first responders, medical and mental health practitioners, investigators, and facility leadership to ensure that victims receive all necessary immediate and ongoing medical, mental health, and support services and that investigators are able to obtain usable evidence to substantiate allegations and hold perpetrators accountable.  [OR-4]

13. **Duty to investigate.**  DOC will investigate all allegations of SA, including third-party and anonymous reports, for purposes of referral for criminal prosecution, disciplinary action and/or critical incident review, and notify alleged victims in writing of investigation outcomes and any disciplinary or criminal sanctions, regardless of the source of the allegation.  All investigations will be carried through to a final determination by DOC regardless of whether the allegation is substantiated or not substantiated, or the alleged abuser or victim remains at the facility.  [IN-1

14. **Criminal investigations and DOC Critical Incident Review.**

   a. DOC investigations into allegations of SA will be prompt, thorough, and objective. Investigations by DOC will include the preservation of the scene and the securing of physical evidence pending the arrival of outside law enforcement officers.

   b. Where there is evidence of conduct that may constitute a crime, the Delaware State Police or local police agency will be contacted to assume the investigation.  When outside law enforcement agencies investigate sexual abuse, DOC will keep abreast of the investigation and cooperate with outside investigators.  At the conclusion of the DSP investigation, DOC will review the findings and determine if further action is necessary.

   c. All allegations of SA will be critically reviewed, and all reviews will be pursued until a full investigation has been completed, whether or not DOC determines that the allegation is unsubstantiated.  Investigations will include an effort to determine whether staff negligence or collusion, physical characteristics of the institution, such as blind spots, staffing, institutional procedure or  policies or any other factor, create a risk that future SA could occur, regardless of whether the reported SA is determined to be substantiated.

    d.  Critical review will be initiated and completed within the timeframes established by the highest ranking facility official, and the highest ranking official must approve the final critical review.

**15.   Administrative investigations.**

    a.  An investigative protocol shall be developed.  It shall provide for involvement of the mental health staff that includes providing support to the women participating in the investigation; [MR 30]

    b.  Investigations will include an effort to determine whether staff negligence or collusion, physical characteristics of the institution, such as blind spots, staffing, institutional procedure or  policies or any other factor, create a risk that future SA could occur, regardless of whether the reported SA is determined to be substantiated.

    c.  Administrative investigations will be documented in written reports that include a description of the physical and testimonial evidence and the reasoning behind credibility assessments.

    d.  Allegations of sexual abuse shall be determined to be substantiated if supported by a preponderance of the evidence.  [IN-3]

    e.  BWCI/DOC shall provide regular PREA training to all investigators that covers: (a) an overview of PREA including investigative national standards; (b) an overview of best practices in investigating sexual abuse in custodial settings; (c) legal liability and administrative sanctions; (d) a study of actual case examples; I the role of medical and mental health in the investigative process; (f) investigative techniques for investigating sexual abuse to include evidence collection; (g) prevention approaches and strategies; and (h) the dynamics of post-traumatic stress on the facts of investigations;

    f.  DOC shall exercise its good faith efforts to insure that all investigators regularly attend a nationally recognized training program in Investigating Sexual Misconduct. [MR 49]

    g.  The credibility of a victim, suspect, or witness will be assessed on an individual basis and not determined by the person's status as inmate or staff.

**16.   Evidence protocol and forensic medical exams.**

    a.  DOC will follow a uniform evidence protocol that maximizes the potential for obtaining usable physical evidence after an incident of alleged SA for use in administrative proceedings and criminal prosecutions.

    b.   As part of DOC's evidence protocol, all alleged victims of inmate-on-inmate sexually abusive penetration or staff-on-inmate SA will be provided access to forensic medical exams performed by qualified forensic medical examiners.  Forensic medical exams will be provided free of charge to the victim.

17.   **Agreements with outside public entities and community service providers.**  DOC will also maintain agreements with community service providers to: (1) provide inmates with confidential emotional support services related to sexual abuse; and (2) help victims of sexual abuse during their transition from incarceration to the community. [RP-2]

18.   **Grievance Protocols.**

    a.   BWCI shall maintain a grievance procedure that is consistent with Bureau of Prisons Procedure No. 4.4.  [MR 21, 23-24]

    b.   The procedures for instituting grievances and appealing from adverse grievance decisions shall be (1) included in the Inmate Manual, (2) described at every inmate orientation, (3) detailed in writings posted in each housing unit, (4) available from each inmate's counselor, and (5) made available to inmates in the BWCI library, in all places in English and Spanish.  Appropriate efforts shall be made to provide inmates who do not read English or Spanish with the grievance procedure in a language they do read.  [MR 12, 20]

    c.   DOC shall modify the DACS system to limit access to inmate grievance information to supervisory staff who have a role in the investigation or resolution of the grievances.  Incident reports regarding SA shall be marked confidential.  [MR 24]

19.   **Duty to Exhaust Administrative Remedies.**  Inmates reporting sexual assault incidents have a duty defined by applicable law to exhaust administrative remedies.  Incidents in which an inmate claims to have been the victim of a sexual assault are not subject to the grievance process.  Such incidents shall be reported as set forth in Sections 4 through 8 above.  A report made through any of these methods shall be evidence of compliance by the inmate with the duty to exhaust administrative remedies.  A delay in reporting a sexual assault shall not bar BWCI and DOC from investigating the report.  However, investigators may consider the length of delay and any explanation for delay in determining the credibility of the victim and in formulating conclusions as to the allegation.

20.   **Precautionary Actions.**  DOC management who are responsible for reviewing critical incidents must examine areas in the facility where alleged SA has occurred in the past or occurs in the future to assess whether physical barriers, the deployment of staff or other staffing policies or factors, or institutional culture, procedures or policies, (a) may have enabled abuse to occur in the area where the SA is alleged to have occurred, (b) the adequacy of staffing levels in those areas during different shifts, and (c) the need for monitoring technology to supplement security staff supervision.  [PP-3]  Without

limiting the actions that may be determined to be necessary as the result of those examinations, DOC and BWCI shall take the following steps to address security concerns at BWCI:

a. Use cameras to monitor the Booking and Receiving Unit; [MR 13]

b. Use and install cameras to monitor the units, and install sufficient cameras so that camera surveillance will allow posted staff members to see the housing units, kitchen and common areas accessed by inmates. Institute a program to ensure that door control panels are in working order, that radios that may be used for security are located wherever it is determined by BWCI management they should be located, and are in working order, and that supervisors in the kitchen security office can see out in order to supervise; [MR 40]

c. Assess security issues in BWCI;

d. Implement safety and security upgrades in the shower and tub facilities in Unit 7, including enhanced lighting, the installation of shower screens and door modifications, to enable appropriate personnel to observe conduct in the facilities and to determine the number of people in a shower at one time; [MR 16, 19]

e. Adopt a uniform procedure for a mandatory inmate count, which will be used at the change of every shift; [MR 5]

f. DOC shall conduct a staffing analysis to determine the number of employees needed to operate the facility within the parameters of the mission and security and review and update the staffing plan on an annual basis to accommodate changes due to, among other things, then existing PREA best practices, inmate population increase, leave usage changes, FMLA, workers compensation leave and military leave; [MR 42]

g. At least annually, DOC shall have an interdisciplinary review team conduct health and safety assessments at BWCI, focusing on physical plan considerations and the environmental aspects of the living units, and shall provide these assessments directly to the Warden for review and action; [MR 51]

h. Staffing shall be adjusted in an effort to ensure that no employee shall, without being accompanied by a second employee, enter a cell containing a single inmate when the other inmates and staff have left the proximity of the inmate being supervised, with the exception of exigent circumstances for inmate protection or institutional security concerns where there is no reasonable opportunity for the employee to be accompanied by a second employee;

i. DOC shall regularly conduct reviews of  BWCI's written policy and practice to determine whether practices align with policy [MR 27], and to the extent that they do not shall change one or both so that they are consistent;

j.   DOC shall regularly conduct reviews of BWCI policy and identify any and all policy gaps covering at least the following issues: (i) investigative protocol; (ii) staff/inmate boundary issues (iii) sexual misconduct at BWCI; (iv) first responder responsibilities and (v) the reporting of sexual abuse; and [MR 42]

k.   On an ongoing basis, DOC shall create an updated policies and procedures manual that covers: (i) all policy gaps identified after conducting a policy review; (ii) specified sanctions per inmate violation to be followed by all staff/officers; (iii) roles/responsibilities, job descriptions and performance standards of sergeants, lieutenants, corporals and captains; (iv) rank structure and degree of control of supervisors; and (v) the chain of command in operational practice.  [MR 39, 42]

21.   **Limits to cross-gender viewing and searches.**  DOC shall limit cross-gender strip and visual body cavity searches within BWCI to cases of emergency or unforeseen circumstances relating to security or inmate or staff protection.  Except in cases of emergency or unforeseen circumstances relating to security or inmate or staff protection, DOC will prevent nonmedical staff from viewing inmates of the opposite gender who are nude or performing bodily functions.  Cross-gender pat-down searches shall only be conducted when necessary, and DOC shall establish a policy and training governing cross gender pat down searches.  Medical practitioners shall conduct examinations of transgender individuals to determine their genital status only in private settings and only when an individual's genital status is unknown.  [PP-4]

22.   **Accommodating inmates with special needs.**  DOC shall take steps, consistent with applicable law, to ensure that inmates who have limited English proficiency (LEP), or are deaf, or disabled, are able to report sexual abuse to staff directly or through non-inmate interpreters.  Accommodations shall be made to convey all written information about sexual abuse policies, including how to report sexual abuse, verbally to inmates who have limited reading skills or who are visually impaired.  [PP-5]

23.   **Hiring and promotion decisions.**  Except as may be prohibited by applicable law or any collective bargaining agreement, DOC will not hire or promote anyone when it has reasonable cause to believe that the person has engaged in SA in an institutional setting or has engaged in sexual activity in the community facilitated by force, the threat of force, or coercion.  Consistent with Federal, State, and local law, regarding applicants for hire, DOC will make its best efforts to contact all prior institutional employers for information on allegations of SA; will run criminal background checks; and will examine and carefully weigh any history of criminal activity at work or in the community, including convictions for domestic violence, stalking, and sex offenses.

## IV.   INMATE CLASSIFICATION AND SECURITY

24.  **Inmate Management**.

    a.  DOC shall address inmate classification as follow:

        i.  DOC and BWCI will continue the process of review of the classification system at BWCI, including a review of the procedural elements of the classification process and the role of the Institutional Based Classification Committee, in cooperation with the National Institute of Corrections, or other nationally recognized expert, to determine its validity and whether it accurately classifies women inmates.  Any deficiencies found by the review shall be addressed and eliminated; [MR 19]

        ii.  DOC and BWCI shall use female-appropriate offender risk and need instruments that link female offenders to a continuum of programming, which BWCI will use to prepare a written assessment and classification for each inmate, and an individualized case management plan.  The assessment and classification will include an assessment of an inmate's vulnerability and aggression, to be considered in determining housing placement, including roommates, and medical and mental health needs.  The classification process should permit an inmate to reduce her custody level by good institutional behavior and participating in programs; and [MR 18-19]

        iii.  DOC and BWCI shall review the responsibilities and deployment of the Correctional Classification Counselors, who are in a critical position to move the facility towards a gender-responsive case management approach that includes assessment, classification, supervision, referral and treatment, to determine whether it is appropriate to modify their responsibilities and deployment.  [MR 19, 36]

    b.  **Use of screening information.**  Employees will use information from the risk screening to inform housing, bed, work, education, and program assignments with the goal of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive.  DOC will make individualized determinations about how to ensure the safety of each inmate.  Lesbian, gay, bisexual, transgender, or other gender-nonconforming inmates will not be placed in particular facilities, units, or wings solely on the basis of their sexual orientation, genital status, or gender identity.  Inmates at high risk for sexual victimization may be placed in segregated housing only as a last resort and then only until an alternative means of separation from likely abusers can be arranged.  To the extent possible, risk of sexual victimization should not limit access to programs, education, and work opportunities. [SC-2]

    c.  **Medical and mental health screenings—history of sexual abuse.**  Qualified medical or mental health practitioners shall ask inmates about prior sexual

11

victimization and abusiveness during medical and mental health reception and intake screenings.  If an inmate discloses prior sexual victimization or abusiveness, whether it occurred in an institutional setting or in the community, during a medical or mental health reception or intake screening, the practitioner shall provide the appropriate referral for treatment, based on his or her professional judgment.  Disclosure of information related to prior sexual victimization or abusiveness shall be strictly limited to medical and mental health practitioners and other staff, as required by DOC policy and Federal, State, or local law, to inform treatment plans and security and management decisions, including housing, bed, work, education, and program assignments.  Medical and mental health practitioners will obtain informed consent from inmates before reporting information about prior sexual victimization that did not occur in an institutional setting, unless the inmate is under the age of 18.  [MM-1]

## V.   TRAINING

**25.  Employee training.**

a.  DOC will train all DOC employees who are employed at BWCI to be able to fulfill their responsibilities under DOC sexual abuse prevention, detection, and response policies and procedures; the policies included in this Order and Agreement; and relevant Federal, State, and local law.  [TR-1]  This training shall include:

    i.  Notification that the federal Prison Rape Elimination Act and 11 *Del. C.* § 6517, 6535 prohibit sexual contact between personnel and inmates and that an employee working at a detention facility, a contractor or employee of a contractor at a detention facility who engages in consensual sexual intercourse or sexual penetration with a person in custody on the premises of a detention facility is guilty of a felony punishable by imprisonment.

    ii.  Notification that DOC and BWCI have adopted a zero tolerance policy for SA, pursuant to which:

        (1)   all inmates have the right to be free from sexual abuse and all inmates and employees have the right to be free from retaliation for reporting sexual abuse; [TR-1]

        (2)   the employment of any personnel found by a preponderance of the evidence to have (a) had sexual contact with an inmate or otherwise have committed SA; (b)  to have failed to report known information concerning SA by personnel occurring after announcement of DOC's adoption of the Zero Tolerance of Sexual Abuse policy to the PREA Coordinator; (c) to have retaliated against any person for reporting or submitting a grievance regarding

12

alleged SA; or (d) to have failed to report known information regarding such retaliation to DOC Internal Affairs and the PREA Coordinator shall be disciplined; and [MR 37]

(3)     Inappropriate staff behavior of all kinds, towards inmates or fellow staff, will not be tolerated, and making clear what sanctions will be applied in response to inappropriate behavior by staff.  [MR 37, 44]

iii.  In addition to the above, training may include such subjects as the following:

(1)     Presentation of scenarios to increase the skill set of staff in responding to specific behaviors, including training on the appropriate corresponding sanctions; [MR 27]

(2)     Training in how to communicate effectively and professionally with female inmates; [TR-1; MR 37, 44-46]

(3)     Training in the dynamics of sexual abuse in confinement, and the common reactions of sexual abuse victims; [TR-1]

(4)     Training in behavior management; [MR 28]

(5)     Training in recognizing and responding to "red flags" that raise concerns of sexual abuse; and [MR 42]

(6)     Education in the basics of PREA. [MR 43, 45]

b.   DOC acknowledges that all correctional employees employed at BWCI must attend the correctional employee initial training academy provided through the Employee Development Center.  DOC shall maintain written documentation of such training. [TR-1]  DOC will provide periodic refresher information to all employees to ensure that they know DOC's most current sexual abuse policies and procedures.  [TR-1]

c.   In addition to receiving training in accordance with Paragraph b. hereof, all supervisors shall be encouraged to attend the certificate programs offered by the OMB Human Resources covering supervisory and management development.  [MR 43, 46]

d.   The education department staff shall be included in briefings about critical safety and security issues that may impact its operation, and shall be advised of inmates who have a history of aggression and those who are vulnerable or at risk.  [MR 33]

e.   Mental health staff shall be trained in PREA, its implications for the mental health staff, and the role of gender in mental health diagnosis and treatment.  [MR 28]

13

    f.   All clinical staff shall be trained in their obligation to report awareness of SA to the PREA Coordinator or DOC Internal Affairs.  [MR 30]

    g.   All Internal Affairs officers will be trained in PREA, Delaware law relating to DOC staff sexual misconduct and working with women and other special populations. [MR 48]

26.   **Gender-specific cross training**.  DOC shall provide gender-specific cross training to all custody and supervisory staff at BWCI in accordance with nationally recognized best practices.

27.   **Volunteer and contractor training.**  DOC will provide education to all volunteers and contractors who have contact with inmates on their responsibilities under the DOC's sexual abuse prevention, detection, and response policies and procedures; the policies included in this Order and Agreement; and relevant Federal, State, and local law.  The level and type of education provided to volunteers and contractors shall be based on the services they provide and level of contact they have with inmates, but all volunteers and contractors who have contact with inmates will be notified of DOC's zero-tolerance policy regarding sexual abuse.  Volunteers will also be trained in how to report sexual abuse.  The DOC will maintain written documentation showing volunteer and contractor signatures verifying that they understand the training they have received.  [TR-2]

28.   **Specialized training: Investigations.**  In addition to the general training provided to all employees, DOC will ensure that DOC investigators conducting sexual abuse investigations have received comprehensive and up-to-date training in conducting such investigations in confinement settings.  Specialized training might include, for example, such matters as techniques for interviewing sexual abuse victims, proper use of Miranda and Garrity v. New Jersey-type warnings, sexual abuse evidence collection in confinement settings, and the criteria and evidence required to substantiate a case for administrative action or prosecution referral.

29.   **Specialized training: Medical and mental health care.**  DOC will ensure that all full- and part-time medical and mental health care practitioners working in its facilities have been trained in how to detect and assess signs of sexual abuse and that all medical practitioners are trained in how to preserve physical evidence of sexual abuse.  All medical and mental health care practitioners will be trained in how to respond effectively and professionally to victims of sexual abuse and how and to whom to report allegations or suspicions of sexual abuse.  [TR-5]

## VI.   INMATE EDUCATION AND ORIENTATION

30.   **Inmate education.**

    a.   Beginning no later than the date selected by DOC for paragraph c. hereof, during the intake process, staff will inform inmates of DOC's zero-tolerance policy regarding sexual abuse and how to report incidents or suspicions of sexual abuse; [TR-3]

14

b. Beginning no later than the date selected by DOC for paragraph c. hereof, within a reasonably brief period of time following the intake process, DOC will provide comprehensive education to inmates regarding their right to be free from sexual abuse and to be free from retaliation for reporting abuse or for submitting a grievance for any other reason, the dynamics of sexual abuse in confinement, the common reactions of sexual abuse victims, DOC sexual abuse response policies and procedures, all procedures by which inmates may report SA by personnel or other inmates, the confidentiality of that reporting, and strategies to establish personal safety, such as avoiding destructive relationships and unsafe situations; [MR 15-16, 20, 23]

c. As of a date to be selected by DOC, but not later than 90 days from execution of this Order and Agreement, all inmates then being housed at BWCI who have not received the information and education to be provided under subparagraphs a. and b. hereof shall receive the information set forth in subparagraph a and the education referred to in subparagraph b.

d. DOC will provide periodic refresher information to all inmates to ensure that they know DOC's most current sexual abuse policies and procedures.  DOC will provide inmate education in formats accessible to all inmates, including those who are LEP, deaf, visually impaired, or otherwise disabled as well as inmates who have limited reading skills.  Documentation will be maintained of inmate participation in these education sessions.  [MR 23, TR-3]

**31.   Inmate Handbook.**

a. DOC shall publish in the Inmate Handbook the following:

  i.   the process for reporting SA;

  ii.  that retaliation for reporting SA is prohibited;

  iii. that calls to the toll free number in the inmate orientation manual for reporting SA may be made without entering an SBI# and will go to DOC Internal Affairs;

  iv.  the procedures for instituting grievances and appealing from adverse grievance decisions;

  v.   how to report sexual abuse on behalf of an inmate;

  vi.  the process to be followed in determining whether pre-trial inmates have committed infractions of BWCI rules, and the procedural rights of the pre-trial population in that process; [MR 25]

  vii. the process by which an inmate may appeal a 24 hour Loss of All Privileges; [MR 25]

15

       viii.    the process by which inmates are given an opportunity to make telephone calls to family and friends for the purpose of getting money placed in their accounts. [MR 16]

       ix.  an explanation of which prohibited conduct is a Class I infraction and which is a Class II infraction.  [MR 25]

       x.  the procedure by which inmates may request, and if appropriate obtain, a change of housing location, because of a reasonable fear of SA or other harm. [MR 20]

  b.  The updated Handbook shall be promptly distributed it to all inmates.  [MR 20] LEP persons who cannot read English but can read another language shall receive a copy of the Inmate Handbook written in a language they can read, if such a version has been published.  [PP 5]

## VII.   CLASSIFICATION, SCREENING AND HOUSING

**32.**   **Screening for risk of victimization and abusiveness.**  All inmates will be screened during intake, during the initial classification process, and at all subsequent classification reviews to assess their risk of being sexually abused by other inmates or sexually abusive toward other inmates.  Employees must conduct this screening using a written or electronic screening instrument tailored to the gender of the population being screened.  Factors to be considered in developing the screening shall include emerging research and the DOC's own data analysis.

## VIII.   ACCESS TO SERVICES AND CARE

**33.**   **Inmate access to outside confidential support services.**  In addition to providing on-site mental health care services, DOC will provide inmates with access to outside victim advocates for emotional support services related to sexual abuse.  DOC will give inmates the current mailing addresses and telephone numbers, including toll-free hotline numbers, of local, state, and/or national victim advocacy or rape crisis organizations and enable reasonable communication between inmates and these organizations.  DOC will inform inmates, prior to giving them access, of the extent to which such communications will be private, confidential, and/or privileged.  [RE-3]

**34.**   **Access to emergency medical and mental health services.**  Victims of sexual abuse will have timely, unimpeded access to emergency medical treatment and crisis intervention services, the nature and scope of which are determined by medical and mental health practitioners according to their professional judgment.  Treatment services must be provided free of charge to the victim and regardless of whether the victim names the abuser.  If no qualified medical or mental health practitioners are on duty at the time a report of recent abuse is made, security staff first responders will take

preliminary steps to protect the victim and immediately notify the appropriate medical and mental health practitioners.  [MM-2]

35. **Ongoing medical and mental health care for sexual abuse victims and sex offenders.**  DOC will provide ongoing medical and/or mental health evaluation and treatment to all known victims of sexual abuse.  The evaluation and treatment of sexual abuse victims must include appropriate follow-up services, treatment plans, and, when necessary, referrals for continued care following their release from custody.  The level of medical and mental health care provided to inmate victims shall match the community level of care generally accepted by the medical and mental health professional communities.  DOC will conduct a mental health evaluation of all known sex offenders and provide treatment, as deemed necessary by qualified mental health practitioners.  [MM-3]

## IX.   DATA COLLECTION AND REVIEW

36. **Data collection.**  DOC will collect accurate, uniform data for every reported incident of sexual abuse ("Sexual Abuse Data") using a standardized instrument and set of definitions.  DOC will aggregate the incident-based sexual abuse data at least annually.  The incident-based data collected will include, at a minimum, the data necessary to answer all questions, as required by federal PREA regulations.  Data will be obtained from multiple sources, including reports, investigation files, and sexual abuse incident reviews.  [DC-2]

37. **Assessment and use of monitoring technology.**  DOC will assess, at least annually, the feasibility of and need for new or additional cost-effective and appropriate monitoring technology to supplement its sexual abuse prevention, detection, and response efforts.  DOC will develop a plan for securing such technology when necessary.  [PP-7]

38. **Sexual abuse incident reviews.**  DOC will treat all instances of sexual abuse as critical incidents to be examined by a team of upper management officials, with input from line supervisors, investigators, and medical/mental health practitioners.  The review team will evaluate each incident of sexual abuse to identify any policy, training, or other issues related to the incident that indicate a need to change policy or practice to better prevent, detect, and/or respond to incidents of sexual abuse.  The review team will also consider whether incidents were motivated by racial or other group dynamics at the facility.  When incidents are determined to be motivated by racial or other group dynamics, upper management officials will immediately notify the Warden of BWCI and begin taking steps to rectify those underlying problems. The review team will prepare a report of its findings and recommendations for improvement and submit it to the Warden.  [DC-1]  When problems or needs are identified, DOC must take effective corrective action.  [PP-3]

39. **Data review for corrective action.**  DOC will review, analyze, and use all SA Data, including incident-based and aggregated data, to assess and improve the effectiveness of its sexual abuse prevention, detection, and response policies, practices, and training.

17

Using these data, DOC will identify problem areas, including any racial dynamics underpinning patterns of sexual abuse, physical characteristics of the institution, such as blind spots, staffing, institutional procedure or policies, take corrective action on an ongoing basis, and, at least annually, prepare a report summarizing its findings and corrective actions for BWCI. DOC's disclosure obligation under this paragraph shall be limited to the contents of the report and shall not include the raw data used to prepare the report. The annual report will also include a comparison of the current year's data and corrective actions with those from prior years and provide an assessment of the DOC's progress in addressing sexual abuse. DOC's report will be approved by the Commissioner, submitted to the appropriate legislative body, and made readily available to the public through its Web site or through other means. DOC may redact specific material from the reports when publication would present a clear and specific threat to the safety and security of a facility, but it must indicate the nature of the material redacted. [DC-3]

40. **Data storage, publication, and destruction.** DOC will ensure that the collected Sexual Abuse Data are properly stored, securely retained, and protected. DOC will make all aggregated sexual abuse data, from facilities under its direct control and those with which it contracts, readily available to the public at least annually through its Web site or through other means. Before making aggregated sexual abuse data publicly available, DOC will remove all personal identifiers from the data. DOC will maintain sexual abuse data for at least 10 years after the date of its initial collection unless Federal, State, or local law allows for the disposal of official information in less than 10 years. [DC-4]

41. **Audits.** DOC will ensure that BWCI is audited to measure compliance with this Order and Agreement. Audits must be conducted at least every three years by independent and qualified auditors, who must pass background and security checks. BWCI will allow the auditor to enter and tour facilities, review documents, and interview staff and inmates, as deemed appropriate by the auditor, to conduct comprehensive audits. DOC will ensure that the report of the auditor's findings and plans for corrective action, if any, for all relevant facilities will be published on the DOC's Web site if it has one or are otherwise made readily available to the public. [AU-1]

42. **Accreditation.** DOC may pursue accreditation of BWCI and other facilities and institutions through the American Corrections Association ("ACA") or similar bodies imposing standards on correctional systems and determining compliance.

## X.   DISCIPLINE

43. **Disciplinary sanctions for staff.** DOC employees shall be subject to disciplinary sanctions up to and including termination when they have violated DOC sexual abuse policies. [DI-1]

44. **Disciplinary sanctions for inmates.** Inmates shall be subject to disciplinary sanctions pursuant to a formal disciplinary process following an administrative ruling that the

inmate engaged in inmate-on-inmate sexual abuse or following a criminal finding of guilt for inmate-on-inmate sexual abuse.  Sanctions shall be commensurate with the nature and circumstances of the abuse committed, the inmate's disciplinary history, and the sanctions meted out for comparable offenses by other inmates with similar histories. The disciplinary process must consider whether an inmate's mental disabilities or mental illness contributed to his or her behavior, when determining what type of sanction, if any, should be imposed.  Possible sanctions may include interventions designed to address and correct underlying reasons or motivation for the abuse, such as requiring the offending inmate to participate in therapy, counseling, or other programs. [DI-2]

## XI.  ENFORCEMENT

**45.  Compliance with PREA Regulations**.

a.  The Parties agree that the above terms of this Agreement are meant, *inter alia,* to fulfill at least the minimum requirements that DOC will be required to meet under the Prison Rape Elimination Act (PREA).  Plaintiff does not expect DOC to create duplicate or redundant systems or policies and acknowledges that DOC is free to substitute the terminology in this agreement with terminology more closely associated with implementation of PREA (e.g., "PREA Coordinator" instead of "prevention of sexual abuse coordinator").

b.  No more than 90 days after the U.S. Department of Justice finalizes its PREA standards and issues final regulations binding on DOC and BWCI, parties will meet and confer to resolve any conflicts that arise between implementation of the standards and implementation of this Order and Agreement.  However, both parties acknowledge that the PREA standards will not be used to materially alter any provision of this order and Agreement.

c.  Upon the final adoption and promulgation of regulations under the PREA statute applicable to DOC and to BWCI, DOC and BWCI shall take steps to comply with such regulations by their effective date, and according to the timetable for compliance set forth in the regulations.

d.  To the extent, if any, that compliance with provisions of the Agreement would violate the final regulations or any amended regulations, the mandate of the regulations shall control over the language of the Agreement, and DOC compliance with the regulation shall not be a violation of this agreement and order.

**46.  Moss Group Reassessment.**  DOC shall explore the use of the Moss Group to re-evaluate progress by DOC with respect to recommendations in the Moss Report with respect to BWCI.  The scope and timing of any such re-assessment of BWCI shall be at the discretion of DOC, and subject to the availability of funds to cover the cost of such investigation and reporting.  The results of any such reassessment shall be shared with

the signatories to this Agreement, and shall constitute evidence of compliance with the terms of this Agreement.

47. **Information Sharing.**   DOC and BWCI shall cooperate with the signatories to the Agreement by providing statistics, analysis, reports, audits, and other information regarding compliance with the Agreement. At reasonable times and upon reasonable notice, which need not be more than 30 days, DOC and BWCI shall provide to ACLF copies of documents or things requested by ACLF for the purpose of determining whether DOC and BWCI are complying with this agreement and order.

48. **Court Enforcement.**   Upon execution of this Agreement, it shall be entered as an Order of the United States District Courtfor the District of Delaware (the "Court").  The above –captioned lawsuit shall then be dismissed, without prejudice to a filing by or on behalf of the plaintiff, in the event of a material breach of this Agreement by the DOC, and the inability of counsel to cure the breach through reasonable means after meeting and conferring.  The issues before the Court in the event of such filing shall be limited to the enforcement of the Agreement through appropriate sanctions, in the event the Court would find that a material breach of its conditions has occurred.  The American Civil Liberties Union of Delaware Foundation ("ACLF") shall have the right to seek enforcement of this Order and Agreement, and DOC shall not oppose an application by ACLF to intervene in this action for that purpose.

49. **Modification.**   This agreement may only be modified by written consent of the undersigned parties or their successors.  Any changes or amendments to the agreement shall be submitted to the Court for purposes of the entry of a Court Order to reflect the revised agreement.  To the extent that the PREA Act, standards, or regulations issued pursuant thereto shall conflict with the terms of the agreement, the agreement shall be deemed to be modified to conform to the new language of the Act, standards, or regulations.  Compliance by BWCI and DOC with the amended Act, standards, and regulations shall be deemed to be compliance with the agreement, to the extent of any conflict.

50. **Termination.**   This agreement shall remain in force for a period of five years from the effective date, unless terminated by mutual agreement of the parties pursuant to the section on modification.  The effective date is the date of entry of the Court Order docketing the agreement.

51. **Admissibility.**   This Agreement shall not be deemed to be an admission of liability or wrongdoing by any Party, and its admissibility may be limited in accordance with Rule 408 of the Federal Rules of Evidence in any court proceeding, except in an action to enforce liability.

/s/ John W. Shaw
John W. Shaw, Esquire (I.D. #3362)
Pilar G. Kraman, Esquire (I.D. #5199)
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
pkraman@ycst.com

Richard H. Morse, Esquire (I.D. #531)
American Civil Liberties Union
   Foundation of Delaware
100 W. 10th Street, Ste. 603
Wilmington, DE 19801
rmorse@aclu-de.org

*Counsel for Plaintiff, Michelle Bloothoofd*

Marion M. Quirk, Esquire  (I.D. # 4136)
Cole, Schotz, Meisel, Forman & Leonard, P.A
500 Delaware, Ave., Suite 1410
Wilmington, DE 19801
(302) 651-2007
mquirk@coleschotz.com

*Counsel for American Civil Liberties
Union Foundation of Delaware*

.
Dated:  September 16, 2011

/s/ Ralph K. Durstein, III
Ralph K. Durstein, III, Esquire (I.D. #912)
Deputy Attorney General
Delaware Department of Justice
Carvel State Office Bldg.
820 North French Street
Wilmington, DE 19801
(302) 577-8510
Ralph.Durstein@state.de.com

Devera B. Scott, Esquire (I.D. #4756)
Deputy Attorney General
102 W. Water St., 3rd Floor
Dover, DE 19901
(302)739-4636
devera.scott@state.de.us

*Counsel for Defendants, Carl Danberg,
Patrick Ryan, Douglas Repetti, Colleen
Shotzberger, Alonzo Hicks, Wayne Dial,
Officer Lafonz, Officer Mills, Officer Kearney,
and Officer Tabron*

Dated:  September 16, 2011

SO ORDERED  this _____ day of _____, 2011

_____

United States District Judge