IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ACLF OF DELAWARE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DEPARTMENT OF CORRECTION, )<br>STATE OF DELAWARE, )<br>)<br>Defendants. ) | C.A. Nos. 09-179-SLR-SRF, 10-868-SLR<br>(Consolidated) |

## REPORT AND RECOMMENDATION

### I.  INTRODUCTION

Presently before the court in this prisoner civil rights action is the Motion to Compel Enforcement of Order and Agreement brought by plaintiff, American Civil Liberties Union Foundation of Delaware ("ACLF"). (D.I. 124) Defendants Department of Correction ("DOC") and the Baylor Womens' Correctional Institution ("BWCI" and, together with DOC, "State Defendants") oppose ACLF's motion. (D.I. 125) For the following reasons, I recommend that the court grant in part and deny in part ACLF's motion to compel.

### II.  BACKGROUND

Michelle Bloothoofd, a former inmate at BWCI, initiated the instant prisoner civil rights action on March 17, 2009, alleging that she was forcibly sexually assaulted by a former correctional officer on October 12, 2008 while she was an inmate at BWCI. (D.I. 2) On August 18, 2011, the parties mediated the dispute before a Magistrate Judge of this court. The Order and Agreement (the "Order") is the product of lengthy and industrious efforts by the parties to resolve the litigation and set a course to prevent similar incidents in the future. (D.I. 123) The stated goal of the Order was to require that DOC establish policies regarding the prevention of

sexual abuse within one year of the Order's execution. (*Id.* at 1) The court entered the Order on September 19, 2011.

The State Defendants failed to achieve full compliance with the Order within the one-year time frame. (D.I. 124 at 2; D.I. 125 at 7-8) The parties exchanged communications to discuss plans for compliance through December 2012, and agreed upon several extensions of time. (Ex. 57) However, DOC failed to respond to subsequent communications from ACLF in January and February 2013. (Exs. 58-60) As a result, ACLF filed the instant Motion to Compel Enforcement of Order and Agreement on February 27, 2013. (D.I. 124) ACLF cited twenty-six instances of non-compliance with the Order. (D.I. 137)

On July 23, 2013, the court entered an order referring the instant matter to the undersigned Magistrate Judge for purposes of determining whether: "(a) plaintiff's expectations are reasonable and consistent with the intent of the order; and (b) defendant is in substantial compliance with the order or working diligently, reasonably and in good faith toward that end." (D.I. 132)

### III.   DISCUSSION

#### A.   Substantial Compliance and Reasonableness of ACLF's Expectations

To demonstrate substantial compliance, a party must show that it "(1) has taken all reasonable steps to comply with the court order at issue, and (2) has violated the order in a manner that is merely 'technical' or 'inadvertent.'" *F.T.C. v. Lane Labs-USA, Inc.*, 624 F.3d 575, 589 (3d Cir. 2010) (quoting *Robin Woods*, 28 F.3d at 399). ACLF concedes that the State Defendants have made significant progress toward achieving compliance with the requirements of the Order as a whole. (10/8/13 Tr. at 111:23 – 112:2; 74:2-4) However, the State Defendants have not yet taken all reasonable steps to comply with several of the Order's requirements.

Compliance with the remaining requirements of the Order is important to fulfill the Order's intention. The overarching purpose of the Order, as set forth in its opening paragraph, is the "prevention of sexual abuse." (D.I. 123 at 1) The comprehensive list of detailed requirements aims to achieve this goal by both eliminating opportunities for abuse to occur and holding prison officials and employees accountable for following proper procedures. The State Defendants agreed to the requirements of the Order, and agreed to achieve full compliance within one year, when they executed the Order on September 16, 2011. (*Id.* at 21)

The recommendations below are made in view of the language and purpose of the Order, as well as the State Defendants' agreement and consent to be bound by the Order. The recommended disposition on each disputed paragraph is reflected in the subsequent chart.

| LANGUAGE OF ORDER | RECOMMENDED DISPOSITION |
|---|---|
| **Paragraph 1 – Zero Tolerance of Sexual Abuse policy and introductory paragraph of Order:**<br><br>DOC shall be deemed to have accepted, and will comply with, the following policies regarding the prevention of sexual abuse, which includes any sexual activity between any employee of DOC or DOC contractor or vendor . . . and any inmate<br><br>1. Adopt and enforce a written Zero Tolerance of Sexual Abuse policy, which shall include SA [sexual abuse] prevention, detection, and response policies and procedures and which shall be applicable to all DOC correctional institutions. DOC shall take steps to advise all personnel of the policy. | The State Defendants have substantially complied with this provision. ACLF claims that § IV.F. of DOC PREA Policy 8.60 (the "DOC PREA Policy")[1] is deficient in that it fails to incorporate the § IV.A definition of "sexual **relations** in a detention facility" among the listed definitions of "sexual **abuse**" in § IV.F. The Order requires the adoption of a written Zero Tolerance of Sexual Abuse policy, which has been done. Section V.C.1.a. of the DOC PREA Policy provides that "[t]here is Zero-Tolerance for any type of sexual abuse between offenders and staff." The policy defines "sexual abuse" to include "[s]exual abuse of an inmate, detainee, or resident by a staff member, contractor, or volunteer . . . **with or without consent** of the inmate, detainee, or resident." DOC PREA policy, § IV.F.8-16. These definitions are consistent with the definition of "sexual relations in a detention facility." ACLF stresses that the inmates must be aware that "even unforced sex is absolutely prohibited by DOC." The DOC PREA Policy is substantially compliant with the prohibition of |

---

[1] The DOC PREA Policy is found at Exhibit 32 of the documents submitted by the State Defendants on October 1, 2013.

| | |
|---|---|
| | consensual and non-consensual sexual activity in the prison. Sections IV.A., IV.F., and V.C.1.a of the DOC PREA Policy, read as a whole, do not suggest exceptions to the Zero Tolerance policy for any type of sexual activity. |
| **Paragraph 4(a)(iii) – Reporting Sexual Abuse:**<br><br>BWCI will provide multiple internal ways for inmates to easily, privately, and securely report SA, retaliation by other inmates or staff for reporting SA, and staff neglect or violation of responsibilities that may have contributed to an incident of SA. This will include at least one way for inmates to report the abuse to an entity office outside of BWCI . . . . The multiple internal ways shall include the following:<br><br>iii. Calling a toll free number . . . | Following the testimony presented at the oral argument on October 8, 2013, counsel for ACLF indicated that this paragraph is no longer in dispute. |
| **Paragraph 4(a)(iii) – Reporting Sexual Abuse:**<br><br>iii. All calls to the toll free number shall be recorded in a log, and a copy of the log shall be sent to the PREA coordinator on a monthly basis. | The State Defendants are not in compliance with this requirement. Paragraph 12 of the Warden's affidavit describes weekly meetings, but does not identify a log in which calls made to the toll free number are recorded. (Ex. 1 at ¶ 12) The December 24, 2012 letter states that "[t]he hotline messages are not logged," and an investigation log for a particular incident is only opened "[i]f the message warrants an investigation." (Ex. 57 at ¶ 6)<br><br>The evidence cited by the State Defendants reflects that investigators respond to hotline messages on a regular basis, but this does not reflect substantial compliance with the requirements of the Order. By executing the Order, the State Defendants specifically agreed to maintain a written log of hotline messages. |

4

| | |
|---|---|
| **Paragraph 5 – Protection against Retaliation**<br><br>DOC will protect all inmates and staff who report sexual abuse or cooperate with sexual abuse investigations from retaliation by other inmates or staff. DOC will employ multiple protection measures, such as housing changes or transfers for inmate victims or abusers, removal of alleged staff or inmate abusers from contact with victims, and emotional support services for inmates or staff who fear retaliation for reporting sexual abuse or cooperating with investigations. DOC will monitor the conduct and/or treatment of inmates or staff who have reported sexual abuse or cooperated with investigations, including any inmate disciplinary reports, housing, or program changes, for at least 90 days following their report or cooperation to see if there are changes that may suggest possible retaliation by inmates or staff. As part of its efforts to determine if retaliation has occurred, DOC will follow up with the inmate. When retaliation is confirmed, DOC shall immediately take steps to protect the inmate or staff member. | Counsel for ACLF indicated that the portion of this paragraph regarding housing changes to protect women who report abuse from retaliation is compliant in light of the DOC Sexual Assault Response Plan adopted in September 2013. However, ACLF objects to the elimination of the 90-day monitoring requirement for inmates who have made reports determined by DOC to be "unfounded."<br><br>The State Defendants have failed to comply with the remaining requirements of this paragraph. The Order provides that "DOC will protect **all** inmates and staff who report sexual abuse . . . from retaliation by other inmates or staff." However, the DOC PREA Policy provides that "the obligation will terminate if the allegation is determined to be unfounded." (Ex. 32 at § V.C.6.g) Although the State Defendants allege that it is consistent with PREA regulations, this exception is inconsistent with the language of the Order. By consenting to the Order, the State Defendants agreed that "the PREA standards will not be used to materially alter any provision of this order and Agreement." (D.I. 123, Ex. A at ¶ 45(b)) The State Defendants did not raise any conflict between the PREA regulations and the terms of the Order within the 90-day period set forth in the Order. (*Id.*; D.I. 140 at 3 n.1)<br><br>The intent of the Order is to protect **all** reporters of sexual abuse against retaliation. For example, there may be an instance where one inmate discloses an incident to another inmate, who then reports it. There should be protection for the reporting inmate and the alleged victim of abuse, even if the report is later determined to be "unfounded." |
| **Paragraph 6 – Third-party reporting:**<br><br>DOC will receive and investigate all third-party complaints of sexual abuse, and will maintain records of the disposition of such complaints. DOC will acknowledge receipt of the third party complaint, in writing to the third-party complainant, and will tell the | The State Defendants have failed to comply with the requirements of this paragraph. Paragraph 6 requires that written notifications be sent to third-party complainants, but the State Defendants have produced no written evidence to show compliance. Moreover, at oral argument, the Warden testified that written notifications are sent to third-party complainants only when the |

| | |
|---|---|
| third party complainant, in writing, when the investigation has been completed. DOC will publicly distribute information on how to report sexual abuse on behalf of an inmate. | allegations are substantiated. (10/8/13 Tr. at 30:15-24) This is inconsistent with the Order, which does not limit the written notifications to substantiated cases. |
| **Paragraph 7 – Staff and facility head reporting duties:**<br><br>All staff members are required to report immediately to the PREA Coordinator and DOC Internal Affairs any knowledge, suspicion, or information they receive regarding . . . (b) retaliation against inmates or staff who reported alleged SA; . . . . Except as prohibited by law or by any collective bargaining agreement, the reports, including the reporting staff member's identity, will be confidential. | The State Defendants have failed to substantially comply with the requirements of this paragraph. ACLF correctly argues that substantial compliance would be achieved if § V.C.6.g is removed. Section V.C.6 of the DOC PREA Policy is intended to effectuate the reporting requirements of paragraph 7 of the Order. Subparagraph g of § V.C.6, which states that "[t]he Department's obligation to monitor will terminate if the allegation is determined to be unfounded," relates to monitoring, not reporting sexual abuse. To leave it in the policy would generate confusion and an inconsistency with the requirement in paragraph 5 of the Order for monitoring **all** sex abuse cases.<br><br>Once subparagraph g is removed, the State Defendants will be in substantial compliance. Section V.C.6.b, which requires "all staff to report immediately any retaliation against staff or offenders that may report such an incident of sexual abuse," substantially complies with paragraph 7 of the Order. |
| **Paragraph 10(a) – Responding to Assertions of Sexual Abuse or Retaliation for Reporting SA:**<br><br>a. Immediately upon receipt of a grievance that asserts SA, retaliation by other inmates or staff for reporting SA, or staff neglect or violation of responsibilities that may have contributed to an incident of SA, the Inmate Grievance Chair shall deliver a copy of the grievance to the PREA Coordinator. Upon receipt of an SA Complaint, the person who receives it shall deliver a copy to the PREA Coordinator. Upon preparation of an SA Report, the person who prepares it shall deliver it to the PREA Coordinator. Transmittal of the foregoing documents to the PREA Coordinator may be made | The State Defendants have failed to substantially comply with the requirements of this paragraph. It is undisputed that the PREA policies do not require delivery of sexual abuse complaints and reports to the PREA Coordinator. The State Defendants rely on the testimony of Warden Caple to show compliance with this provision. (10/8/13 Tr. at 9:20 – 48:25) Absent a written policy, there are no reasonable means to ensure continuing substantial compliance with paragraph 10(a) of the Order.<br><br>As Warden Caple testified, written policies are "important because it gives staff a guideline," and although the guideline "is not an end all, be all," they are important for staff to know what they have to do. (10/8/13 Tr. at 12:4-19) Counsel for the State Defendants also acknowledged that, "we |

6

| | |
|---|---|
| electronically. The PREA Coordinator shall enter all of the foregoing grievances, SA Complaints, and SA Reports into a log. | put [certain requirements] in writing to reflect, so everybody understands what needs to be done." (10/8/13 Tr. at 91:1-3) A written policy would help eliminate uncertainty or confusion among staff members and would hold officials and staff accountable for ensuring compliance.[2] Inclusion of this requirement in a written policy would be consistent with the intent of the Order and would be a simple way to resolve the dispute. |
| **Paragraph 10(b) – Responding to Assertions of Sexual Abuse or Retaliation for Reporting SA:**<br><br>b. Within 24 hours of receipt by the Inmate Grievance Chair or the PREA Coordinator, a copy of any grievance relating to claims of SA, retaliation by other inmates or staff for reporting SA, or staff neglect or violation of responsibilities that may have contributed to an incident of SA, shall be delivered to the PREA Coordinator and to DOC Internal Affairs. | Counsel for ACLF indicated that this paragraph is no longer in dispute in light of the DOC PREA policy adopted on September 24, 2013. |
| **Paragraph 13 – Duty to investigate:**<br><br>DOC will . . . notify alleged victims in writing of investigation outcomes and any disciplinary or criminal sanctions, regardless of the source of the allegation. All investigations will be carried through to a final determination by DOC regardless of whether the allegation is substantiated or not substantiated, or the alleged abuser or victim | The State Defendants have failed to substantially comply with this paragraph of the Order. Ensuring that investigations are completed and victims are informed is mandated under the Order. As previously noted in the discussion of Paragraph 10(a), *supra*, the State Defendants acknowledged the importance of written policies during oral argument. A written policy would help eliminate uncertainty or confusion among staff members and would hold officials and staff |

---

[2] The State Defendants have persistently resisted the inclusion of several requirements of the Order in a written policy unless the Order specifies that the requirement must be included in a particular written policy. (10/8/13 Tr. at 77:23-78:3) The State Defendants have failed to articulate what harm would result if they were to include certain requirements in a written policy. Instead, they justify their refusal to adopt written policies by citing examples that do not lend themselves to inclusion in a written policy (*Id.* at 78:3-79:9), or have already allegedly been incorporated into a written policy (*Id.* at 89:4-14), while failing to address other requirements that could easily be incorporated into a written policy. ACLF has repeatedly indicated that inclusion of a number of the requirements in a written policy would satisfy its concerns. (D.I. 137; D.I. 140) The State Defendants' continued refusal to do so, and their proffered justifications such as, "if these services were not being provided [in practice] . . . a complaint might well find its way to the ACLU . . . And we have heard no such complaints," are inadequate in view of the underlying facts that gave rise to the Order. (10/8/13 Tr. at 91:9-12)

| | |
|---|---|
| remains at the facility. | accountable for ensuring compliance. Inclusion in a written policy would be consistent with the intent of the Order and would be a simple way to resolve the dispute. *See supra* n.2. |
| **Paragraph 14(b) – Criminal investigations and DOC Critical Incident Review:**<br><br>b. Where there is evidence of conduct that may constitute a crime, the Delaware State Police or local police agency will be contacted to assume the investigation. When outside law enforcement agencies investigate sexual abuse, DOC will keep abreast of the investigation and cooperate with outside investigators. At the conclusion of the DSP investigation, DOC will review the findings and determine if further action is necessary. | The State Defendants substantially comply with this paragraph of the Order. Section V.C.7.b of the DOC PREA Policy provides that, "[w]here allegations are referred for criminal investigations by the Delaware State Police, the Department shall ensure that the cases are referred promptly, and that a designated staff representative follows the case until it is determined to be substantiated, unsubstantiated, or unfounded." Section V.C.2.d of the DOC PREA Policy provides that "[t]he Department shall conduct an administrative and/or criminal investigation for each allegation of sexual abuse." |
| **Paragraph 14(c) – Criminal investigations and DOC Critical Incident Review:**<br><br>c. All allegations of SA will be critically reviewed, and all reviews will be pursued until a full investigation has been completed, whether or not DOC determines that the allegation is unsubstantiated. | The State Defendants have substantially complied with this requirement. Section V.C.10 of the DOC PREA Policy states that DOC "shall conduct a sexual abuse incident review at the conclusion of every sexual abuse investigation, within 30 days, including where the allegation has not been substantiated." ACLF alleges that the requirement is not met because the DOC PREA Policy adds the qualifier, "unless the allegation has been determined to be unfounded." Paragraph 14(c) only addresses substantiated and unsubstantiated cases. It does not set forth any requirements regarding how the State Defendants must address unfounded cases. As a practical matter, no beneficial goal consistent with protection against sexual abuse is likely to be advanced by requiring critical reviews of unfounded reports. |
| **Paragraph 14(d) – Criminal investigations and DOC Critical Incident Review:**<br><br>d. Critical review will be initiated and completed within the timeframes established by the highest ranking facility official, and the highest ranking official must approve the final critical review. | The State Defendants have failed to substantially comply with this requirement. Section V.C.10.a of the DOC PREA Policy only requires that the critical review period be initiated within 30 days of the conclusion of the investigation, with no timeframe set for completion. The DOC Sexual Abuse Response Plan provides that, "[u]pon completion of the investigation, the Warden will ensure that a sexual abuse incident review team |

| | |
|---|---|
| | meets, within 30 days of the investigation being completed, to discuss the case." Again, this meets the requirement for establishing a timeframe in which to initiate critical review, but there is no timeframe for completing critical review.<br><br>The requirement for approval by the Warden is sufficiently met. The Sexual Assault/Critical Incident Review form[3] requires signatures from the Warden "or Designee." This indicates that, before the critical review is considered complete, approval by the Warden is required. |
| **Paragraph 15(a) – Administrative investigations:**<br><br>a. An investigative protocol shall be developed. It shall provide for involvement of the mental health staff that includes providing support to the women participating in the investigation; | Counsel for ACLF indicated that this paragraph is no longer in dispute in light of the Guidelines and Strategic Plan (the "Guidelines").[4] (D.I. 140 at 2) |
| **Paragraph 15(c) – Administrative investigations:**<br><br>c. Administrative investigations will be documented in written reports that include a description of the physical and testimonial evidence and the reasoning behind credibility assessments. | The State Defendants are not in compliance with this requirement of the Order. The DOC PREA Policy and Guidelines do not include a requirement of written reports of the investigations. This is not in keeping with the Order. The parties conducting administrative investigations must be made aware that a written report of the investigation is required. The State Defendants have described their "practice" of submission of an incident report on a database. (10/8/13 Tr. at 51:1-20) However, to ensure consistent compliance with this practice, as required by the Order, it should be incorporated in a written policy. |
| **Paragraph 15(d) – Administrative investigations:**<br><br>d. Allegations of sexual abuse shall be determined to be substantiated if supported by a preponderance of the evidence. | Counsel for ACLF indicated that this paragraph is no longer in dispute in light of the DOC PREA policy adopted on September 24, 2013. |

---

[3] This form was included with the State Defendants' exhibits to the October 1, 2013 submission as Exhibit 47.
[4] The Guidelines and Strategic Plan are attached to D.I. 139 as Exhibit 4.

| | |
|---|---|
| **Paragraph 15(e) – Administrative investigations:**<br><br>e. BWCI/DOC shall provide regular PREA training to all investigators that covers: (a) an overview of PREA including investigative national standards; (b) an overview of best practices in investigating sexual abuse in custodial settings; . . . (d) a study of the actual case examples; the role of medical and mental health in the investigative process; (f) investigative techniques for investigating sexual abuse to include evidence collection; . . . and (h) the dynamics of post-traumatic stress on the facts of investigations; | Following the testimony presented at the oral argument on October 8, 2013, counsel for ACLF indicated that this paragraph is no longer in dispute. |
| **Paragraph 15(f) – Administrative investigations:**<br><br>DOC shall exercise its good faith efforts to insure that all investigators regularly attend a nationally recognized training program in Investigating Sexual Misconduct. | Following the testimony presented at the oral argument on October 8, 2013, counsel for ACLF indicated that this paragraph is no longer in dispute. |
| **Paragraph 17 – Agreements with outside public entities and community service providers:**<br><br>DOC will also maintain agreements with community service providers to: (1) provide inmates with confidential emotional support services related to sexual abuse; and (2) help victims of sexual abuse during their transition from incarceration to the community. | The State Defendants have substantially complied with this requirement of the Order, but additional follow-up is needed. As of the oral argument held on October 8, 2013, the State Defendants did not have a fully executed contract with a service provider. However, the testimony reflects that steps are being taken to execute a contract. (10/8/13 Tr. at 38:8-19) |

| | |
|---|---|
| **Paragraph 18 – Grievance Protocols:**<br><br>b. The procedures for instituting grievances and appealing from adverse grievance decisions shall be (1) included in the Inmate Manual . . . . | The State Defendants are not in compliance with this requirement of the Order. The Order requires that the grievance procedures be included in the Inmate Handbook.[5] Including the information in a PowerPoint presentation shown to inmates during orientation fails to satisfy the requirements of the Order. Inclusion in the Inmate Handbook would enable the inmates to refer back to the procedures as needed. The PowerPoint presentation does not satisfy that goal. |
| **Paragraph 20(b) – Precautionary Actions:**<br><br>DOC and BWCI shall take the following steps to address security concerns at BWCI: b. Use and install cameras to monitor the units, and install sufficient cameras so that camera surveillance will allow posted staff members to see the housing units, kitchen and common areas accessed by inmates. | The State Defendants have substantially complied with this requirement of the Order, but additional follow-up is needed. DOC has not yet installed the cameras, but the testimony at the oral argument on October 8, 2013 reflects that steps are being taken to install the cameras. (10/8/13 Tr. at 39:10 – 40:1) Specifically, the wiring and installation of the conduit is complete, but the installation of the cameras is scheduled for mid-November. |
| **Paragraph 20(h) – Precautionary Actions:**<br><br>DOC and BWCI shall take the following steps to address security concerns at BWCI:<br><br>h. Staffing shall be adjusted in an effort to ensure that no employee shall, without being accompanied by a second employee, enter a cell containing a single inmate when the other inmates and staff have left the proximity of the inmate being supervised, with the exception of exigent circumstances for inmate protection or institutional security concerns where there is no reasonable opportunity for the employee to be accompanied by a second employee; | The State Defendants have failed to substantially comply with this requirement, despite the efforts to adjust staff schedules described by Warden Caple in her testimony. (10/8/13 Tr. at 40:9 – 42:10) The cited lack of funding does not excuse non-compliance after the fact. The adequacy of staff and funding are issues the State Defendants were bound to analyze at the time the Order was negotiated and adopted. |
| **Paragraph 34 – Access to emergency medical and mental health services:**<br><br>Victims of sexual abuse will have timely, unimpeded access to . . . crisis intervention services, the nature and scope of which are | Counsel for ACLF indicated that this paragraph is no longer in dispute in light of the DOC PREA policy adopted on September 24, 2013. |

---

[5] The Inmate Handbook was included as Exhibit 7 in the documents submitted by the State Defendants on October 1, 2013.

11

| | |
|---|---|
| determined by medical and mental health practitioners according to their professional judgment. Treatment services must be provided free of charge to the victim and regardless of whether the victim names the abuser. If no qualified medical or mental health practitioners are on duty at the time a report of recent abuse is made, security staff first responders will take preliminary steps to protect the victim and immediately notify the appropriate medical and mental health practitioners. | |
| **Paragraph 35 – Ongoing medical and mental health care for sexual abuse victims and sex offenders:**<br><br>DOC will conduct a mental health evaluation of all known sex offenders and provide treatment, as deemed necessary by qualified mental health practitioners. | The State Defendants have substantially complied with this requirement of the Order. Section V.C.9.b provides that, if the initial screenings "indicate that an offender has previously perpetrated sexual abuse, whether it occurred in an institutional setting or in the community, staff shall ensure that the offender is offered a follow-up meeting with a mental health practitioner . . . ." ACLF suggests that adding the sentence "The treatment deemed necessary by a qualified mental health practitioner shall be provided to the offender" to § V.C.9.b will cure the deficiency. The DOC PREA Policy is sufficient to meet the "substantial compliance" standard in this instance because it provides for treatment "as deemed necessary by qualified mental health practitioners." |
| **Paragraph 36 – Data collection:**<br><br>DOC will collect accurate, uniform data for every reported incident of sexual abuse ("Sexual Abuse Data") using a standardized instrument and set of definitions. DOC will aggregate the incident-based sexual abuse data at least annually. The incident-based data collected will include, at a minimum, the data necessary to answer all questions, as required by federal PREA regulations. Data will be obtained from multiple sources, including reports, investigation files, and sexual abuse incident reviews. | Following the testimony presented at the oral argument on October 8, 2013, counsel for ACLF indicated that this paragraph is no longer in dispute. |
| **Paragraph 38 – Sexual abuse incident reviews:** | The State Defendants are not in substantial compliance with this requirement. The Order requires that incidents of sexual abuse be |

12

| | |
|---|---|
| DOC will treat all instances of sexual abuse as critical incidents to be examined by a team of upper management officials, with input from line supervisors, investigators, and medical/mental health practitioners. The review team will evaluate each incident of sexual abuse to identify any policy, training, or other issues related to the incident that indicate a need to change policy or practice to better prevent, detect, and/or respond to incidents of sexual abuse. The review team will also consider whether incidents were motivated by racial or other group dynamics at the facility. When incidents are determined to be motivated by racial or other group dynamics, upper management officials will immediately notify the Warden of BWCI and begin taking steps to rectify those underlying problems. The review team will prepare a report of its findings and recommendations for improvement and submit it to the Warden. When problems or needs are identified, DOC must take effective corrective action. | examined by upper management officials, but the Sexual Assault Response Plan[6] does not require the involvement of upper management officials. The Warden's responsibility to make sure that DOC staff meets to discuss the case is insufficient to meet the requirements of the Order to establish a "team of upper management officials" to evaluate each incident. The fact that a written policy exists, but falls short of the Order's requirements, supports the fact that the State Defendants are not in compliance with the Order. The written policy contained in the Sexual Assault Response Plan should be modified to reflect the requirements of paragraph 38 of the Order. |
| **Paragraph 40 – Data storage, publication, and destruction:**<br><br>DOC will ensure that the collected Sexual Abuse Data are properly stored, securely retained, and protected. DOC will make all aggregated sexual abuse data, from facilities under its direct control and those with which it contracts, readily available to the public at least annually through its Web site or through other means. Before making aggregated sexual abuse data publicly available, DOC will remove all personal identifiers from the data. DOC will maintain sexual abuse data for at least 10 years after the date of its initial collection unless Federal, State, or local law allows for the disposal of official information in less than 10 years. | Following the testimony presented at the oral argument on October 8, 2013, counsel for ACLF indicated that this paragraph is no longer in dispute. |

---

[6] The Sexual Assault Response Plan was attached as Exhibit 33 to the materials submitted by the State Defendants on October 1, 2013.

13

### B.     Diligence, Reasonableness, and Good Faith

ACLF has failed to meet the heavy burden of showing that the conduct of the State Defendants constitutes bad faith. *See Buddy's Plant Plus Corp. v. Centimark Corp.*, 2012 WL 5254910, at *3 (W.D. Pa. Oct. 24, 2012) ("Questionable practices or conduct on counsel's part by 'failing to communicate' with the court or opposing counsel does not 'rise to the level of bad faith.'" (quoting *Ciocca v. B.J.'s Wholesale Club, Inc.*, 2011 WL 3563560, at *5 (E.D. Pa. Aug. 12, 2011)). The State Defendants have made significant efforts toward achieving compliance with the Order as a whole. Although the State Defendants' efforts fall short of full compliance for the reasons previously stated, the court cannot conclude that the State Defendants' failure to achieve substantial compliance on certain specified requirements amounts to bad faith. ACLF acknowledged that the State Defendants have put a great deal of effort into achieving compliance (10/8/13 Tr. at 111:23 – 112:2; 74:2-4), and addressed the issue of good faith only as a secondary matter in accordance with the court's referral order, emphasizing that its primary concern was obtaining the State Defendants' full compliance with the court's Order (*Id.* at 71:22 – 72:1; 73:24 – 74:1). The evidence before the court supports a conclusion that any apparent lapses in responsiveness by the State Defendants stemmed from the parties' different interpretations of the ongoing communications and meetings, rather than a deliberate attempt by the State Defendants to avoid compliance with the Order. (*Id.* at 75:16-19)

### IV.    CONCLUSION

For the foregoing reasons, I recommend that the court grant in part and deny in part ACLF's motion to compel as follows:

A. The motion to compel should be granted as it pertains to paragraphs 4(a)(iii), 5, 6, 7, 10(a), 13, 14(d), 15(c), 18, 20(h), and 38 of the Order.

B. The motion to compel should be denied as it pertains to paragraphs 1, 10(b), 14(b), 14(c), 15(a), 15(d), 15(e), 15(f), 17, 20(b), 34, 35, 36, and 40 of the Order.

C. The State Defendants shall be given sixty (60) days from the date of this Report and Recommendation to comply with the remaining provisions of the Order.

D. Upon completion of the PREA audit, the State Defendants shall provide copies of the audit report to the court and to ACLF.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. See Sincavage v. Barnhart, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); Henderson v. Carlson, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order in Non-Pro Se Matters for Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the court's website, www.ded.uscourts.gov.

Dated: October 23, 2013

Sherry R. Fallon
United States Magistrate Judge