IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ACLF OF DELAWARE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 09-179-SLR |
| | ) |
| DEPARTMENT OF CORRECTION, | ) |
| STATE OF DELAWARE, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

At Wilmington this 10th day of January, 2014, having reviewed the Report and Recommendation issued by The Honorable Sherry R. Fallon on October 23, 2013, as well as the objections filed thereto by defendant, the Department of Correction of the State of Delaware ("DOC"); the Report and Recommendation (D.I. 144) is adopted in part and overruled in part, as are the objections (D.I. 145), for the reasons that follow:

1. **Background.** In her thorough and well-reasoned Report and Recommendation, Judge Fallon addressed a motion to compel filed by plaintiff, American Civil Liberties Union Foundation of Delaware ("ACLF"), which motion sought enforcement of an order and agreement (hereafter, the "Order") entered into by the parties to resolve litigation involving allegations of sexual assault of a female inmate by a correctional officer at the Baylor Womens' Correctional Institution ("BWCI"). The stated goal of the Order was to require that DOC establish policies regarding the prevention of sexual abuse within one year of the Order's execution, that is, by

September 19, 2012. DOC failed to achieve full compliance with the Order within the one-year deadline. The instant motion, filed on February 27, 2013, included citations to multiple instances of alleged non-compliance with the Order. The matter was subsequently referred to Judge Fallon.

2. In her Report and Recommendation, Judge Fallon found that DOC had failed to comply or substantially comply with 11 of 17 disputed requirements of the Order. She also found DOC to have complied with six of the requirements. Accordingly, Judge Fallon recommended that the court grant in part and deny in part ACLF's motion to compel, with DOC being ordered to address the identified 11 deficiencies on or before December 23, 2013.

3. **Objections.** Although DOC timely filed objections to the Report and Recommendation, it is the court's understanding that, nevertheless, DOC has made efforts to follow a number of Judge Fallon's recommendations, to wit: (a) DOC apparently has revised its written policy to conform to the recommendations as they relate to ¶¶ 5, 6, 13, 15(c), and 38 of the Order (D.I. 145, ex. A); (b) as to, ¶ 18 of the Order, DOC has represented that it is arranging to comply with the recommendation that a copy of the published grievance protocol be attached to the inmate handbook (D.I. 145 at 7); and (c) as to ¶ 14(d) of the Order, dealing with setting deadlines for the completion of critical reviews of allegations of sexual abuse, DOC represents that it "is willing to add" specific language to DOC Policy 8.60, which suggested language would comply with Judge Fallon's recommendation (D.I. 145 at 6). The recommendations related to the above requirements of the Order are well analyzed and grounded in the record. To the extent there are objections, and to the extent DOC has not fully

2

complied with such, the objections are overruled and DOC shall comply consistent with the order entered this same date.

4. With respect to ¶ 4(a)(iii) of the Order, DOC argues that it is in compliance with the requirement that DOC keep a log of all phone calls to the Internal Affairs hotline. Because DOC did not provide evidence on this point to Judge Fallon (and fails yet to cite to any record citation in its papers), the objection is overruled and DOC shall be required, consistent with the order entered this same date, to substantiate its representation that all reports of sexual abuse to the Internal Affairs hotline are recorded in a log, "and that log is provided to the BWCI PREA[1] Coordinator on a monthly basis." (D.I. 145 at 2-3)

5. Regarding ¶ 10(a) of the Order, Judge Fallon found that DOC had failed to substantially comply because there was no written policy requiring delivery of sexual abuse complaints and reports to the PREA Coordinator. Although DOC asserts that there is such a policy, no such written policy has been made part of the record. Therefore, DOC's objection is overruled and DOC shall include ¶ 10(a)'s requirement in its written policy consistent with the order entered this same date.

6. Paragraph 7 of the Order deals with internal reporting requirements. Judge Fallon found that leaving subparagraph (g) in § (V)(C)(6) of DOC Policy 8.60 "would generate confusion and an inconsistency with the requirement in paragraph 5 of the

---

[1] "PREA" is an acronym standing for the Prison Rape Elimination Act of 2003, 28 CFR Part 115. DOC Policy 8.60 was enacted "[t]o establish and maintain a program of education, prevention, detection, investigation, perpetrator punishment, victim treatment and support and data collection related to sexual abuse in compliance with" PREA. (D.I. 145, ex. A)

Order for monitoring **all** sex abuse cases."[2] (D.I. 144 at 6)  Judge Fallon concluded that DOC could achieve substantial compliance simply by deleting subparagraph (g). Rather than eliminating the language of subparagraph (g), DOC added a new subparagraph that requires 90 days of monitoring, making the inconsistency between the two provisions even more apparent.  Given the fear of retaliation, the 90-day monitoring requirement is appropriate and should not be diluted by DOC's apparent effort to avoid such with a determination on the merits.  DOC's objection is overruled. Consistent with Judge Fallon's recommendation, the language contained in former subparagraph (g) (now DOC Policy 8.60, § (V)(C)(6)(h)) shall be stricken.

7. Paragraph 20(h) of the Order provides that "[s]taffing shall be adjusted in an effort to ensure that" no single employee will enter a cell containing a single inmate "when the other inmates and staff have left the proximity of the inmate being supervised."  The record reflects that, although the Warden of BWCI testified that more staff was needed,[3] she also testified that the goal of this paragraph had been achieved through a variety of measures other than adding staff, "including the deployment of additional cameras,[4] adjustment of work schedules, changes in inmate meal attendance

---

[2] More specifically, ¶ 5 of the Order requires that the treatment of all inmates who have reported sexual abuse (or who are cooperating with investigations of reported sexual abuse) be monitored for at least 90 days following the report or start of cooperation.  Subparagraph (g) provides that DOC's "obligation to monitor will terminate if her allegation is determined to be unfounded" (D.I. 138-1 at page 56 of 59), regardless of when that determination is made.

[3] The court is confident that the warden of virtually every institution like BWCI would answer the same way; i.e., the larger the staff-inmate ratio, the better.

[4] See, e.g., D.I. 145 at 9.

4

requirements, changes in correctional officer and counselor assignments, deployment of staff to augment numbers, and overtime. The court recognizes the importance of this preventative measure. However, the language of ¶ 20(h) does not require the addition of staff; it requires the allocation of staff (and, implicitly, other resources) to ensure that no employee has the opportunity to sexually abuse an inmate because that inmate finds herself alone with the employee in a cell. The objection has merit, and the court concludes that the DOC is in substantial compliance with this requirement.[5]

8. Under the heading "Follow-up Items," the DOC has purported to demonstrate compliance with ¶ 17 of the Order, requiring agreements with outside public entities and community service providers to "provide inmates with confidential emotional support services related to sexual abuse" and to "help victims of sexual abuse during their transition from incarceration to the community." There is no dispute that the Memorandum of Understanding ("MOU") entered into by DOC and ContactLifeline, effective November 1, 2013, satisfies the first requirement. (D.I. 145, ex. C) ACLF contends that the MOU fails to satisfy the second requirement. The court finds the language of the second requirement ambiguous,[6] and concludes that the MOU is in substantial compliance. To wit, Section II (4) of the MOU provides that the DOC will "[f]acilitate follow-up and on-going contact as requested by ContactLifeline between the

---

[5] Notably, there has been no evidence of record that this requirement has not been satisfied through any reports of incidents of one-on-one encounters between an inmate and an employee in a cell.

[6] How long does this obligation last, once an inmate is released from incarceration? Given the possible length of time between an incident of sexual abuse and release, is this a mandatory requirement in every case, or one initiated by either the inmate-victim or ContactLifeline?

5

inmate-victim and ContactLifeline personnel without regard to the status of an investigation." In addition, Section III (1)(e) provides that ContactLifeline will provide "follow-up advocacy on request of the inmate-victim." (*Id.*) There are no time limits on the duration of the support or the nature of the support. To the extent further clarification is needed, the court construes the language to include support prior to an inmate's release to ease her transition from incarceration to the community, if either requested by the inmate or the provider.

9. **Conclusion.** For the reasons stated above and in the October 23, 2013 Report and Recommendation, ACLF's motion to compel is granted in part and denied in part. An appropriate order shall issue.

_____
United States District Judge