IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ACLF OF DELAWARE | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 09-179-SLR-SRF |
| | ) |
| DEPARTMENT OF CORRECTION | ) |
| STATE OF DELAWARE, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Presently before the court in this prisoner civil rights action is the motion for attorney's fees and expenses, pursuant to 42 U.S.C. § 1988, of plaintiff American Civil Liberties Union Foundation of Delaware ("ACLF"). (D.I. 149) Defendant Department of Corrections ("DOC") opposes ACLF's motion. (D.I. 155) ACLF seeks an award of $93,769 in attorney's fees and costs for the motion to compel (D.I. 151 at 10), and $31,500 for the motion for fees (D.I. 157 at 10), for a total request of $125,269. The court has jurisdiction pursuant to 28 U.S.C. § 1331. For the following reasons, I recommend that the court grant the motion and award ACLF $125,269 in attorney's fees and costs.

### II. BACKGROUND

Michelle Bloothoofd, a former inmate at the Baylor Women's Correctional Institution ("BWCI"), initiated the instant prisoner civil rights action on March 17, 2009, alleging that a former correctional officer forcibly sexually assaulted her on October 12, 2008 while she was an inmate at BWCI. (D.I. 2) On August 18, 2011, the parties mediated the dispute and entered into an Order and Agreement (the "Order") to settle the case. (D.I. 123) The stated goal of the Order

was to require DOC to establish policies regarding the prevention of sexual abuse within one year of the Order's execution, and the Order authorized ACLF to monitor DOC's compliance and seek enforcement of the Order. (*Id.*) The court entered the Order on September 19, 2011. (*Id.*)

DOC failed to achieve compliance with the Order within the one-year timeframe. (D.I. 144; D.I. 147) The parties exchanged communications to discuss plans for compliance through December 2012, and agreed upon several extensions of time. (Oct. 2013 Flash Drive at Ex. 57) However, DOC failed to respond to subsequent communications from ACLF in January and February 2013. (*Id.* at Exs. 58-60) As a result, ACLF filed a motion to compel enforcement of the Order on February 27, 2013, citing over forty instances of alleged non-compliance with the Order. (D.I. 124; D.I. 137)

At the time the Report and Recommendation was issued, only seventeen instances of alleged non-compliance were still in dispute. (D.I. 144) On October 23, 2013, the undersigned Magistrate Judge issued a Report and Recommendation, recommending that the court rule in ACLF's favor with respect to eleven of the seventeen remaining requirements. (*Id.*) After considering DOC's objections to the Report and Recommendation, the court adopted-in-part and overruled-in-part the undersigned Magistrate Judge's Report and Recommendation. (D.I. 147; D.I. 148) Specifically, the court overruled the Report and Recommendation on two requirements, finding that DOC had achieved substantial compliance on those two issues.[1] (*Id.* at ¶¶ 4-8) All other findings were either upheld or resolved between the issuance of the Report

---

[1] The two requirements upon which the court declined to accept the Report and Recommendation concerned the court's finding that DOC had achieved the goal of preventing isolated one-on-one contact between corrections officers and female inmates through a variety of measures without adding staff. (D.I. 147 at ¶ 7) In addition, the court found that DOC met the requirement for counseling and aftercare for inmates through an agreement known as a "Memorandum of Understanding" ("MOU") with "Project Lifeline" to provide such transitional care. (*Id.* at ¶ 8)

2

and Recommendation and the issuance of the Memorandum Order. The court set a new compliance deadline of February 11, 2014 for the outstanding requirements. (D.I. 148 at ¶ 3)

### III. STANDARD OF REVIEW

Pursuant to the "American Rule," litigants are generally responsible for their own attorney's fees. *Truesdell v. Phila. Hous. Auth.*, 290 F.3d 159, 163 (3d Cir. 2002) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)). However, Congress has provided an exception to the American Rule in civil rights actions by permitting a "prevailing party" to recover attorney's fees. *See* 42 U.S.C. § 1988(b). In relevant part, § 1988 permits a court, "[i]n any action or proceeding to enforce a provision of section[ ] . . . 1983 . . . of this title . . . [to] allow the prevailing party . . . a reasonable attorney's fee as part of the costs." *Id.* A district court should award attorney's fees to a prevailing plaintiff absent special circumstances weighing against such an award. *Truesdell*, 290 F.3d at 163 (citing *County of Morris v. Nationalist Movement*, 273 F.3d 527, 535 (3d Cir. 2001)).

In performing an analysis pursuant to § 1988, the court must first determine whether a plaintiff is a "prevailing party," meaning that the plaintiff has "succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)). Next, the court must determine whether the requested fee is "reasonable" by examining "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* Although this "lodestar" amount is presumed to represent a reasonable fee, the figure may be adjusted to compensate for other factors, including the contingency of success or duplication of work. *See City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986); *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 168-69 (3d Cir. 1973); *Daggett v. Kimmelman*, 811 F.2d 793, 797-98 (3d Cir. 1987).

3

## IV. ANALYSIS

### A. Eligibility to Recover Attorney's Fees

As a preliminary matter, the court addresses DOC's challenges to ACLF's authority to request attorney's fees. First, DOC alleges that the terms of the Bloothoofd settlement agreement bar further recovery of attorney's fees, claiming that "the award of fees to ACLF and the release of liability are clear." (D.I. 155 at 4, 12-13; Ex. 1) However, the Bloothoofd settlement agreement does not expressly bar recovery of attorney's fees for claims arising after the date the release was executed. *See Torres v. Metro. Life Ins. Co.*, 189 F.3d 331, 333 (3d Cir. 1999) (holding that a suit for recovery of attorney's fees is foreclosed only upon express stipulation in the settlement agreement). Specifically, the Bloothoofd settlement agreement bars claims for attorney's fees "which may have resulted, directly or indirectly, or may in the future develop, **up to the date that this release is executed**, as a result of an incident in the Baylor Women's Correctional Institution that is alleged to have occurred on or about October 12, 2008." (*Id.*, Ex. 1 at 2) (emphasis added). The Bloothoofd settlement agreement was executed on September 30, 2011, and the instant claim for attorney's fees began to accrue in January 2013. (D.I. 152 at ¶ 6) Therefore, ACLF's claim for attorney's fees is not barred under the express language of the Bloothoofd settlement agreement.

Second, DOC contends that the statutory fee provisions of the Civil Rights Act do not apply to enforcement of the Order, which is a collateral agreement negotiated by different parties. (D.I. 155 at 4, 12) This position is not consistent with the language of the Order or the relevant case authority. Although the parties to the Order were not the original parties to the civil rights action, the court expressly authorized ACLF to monitor DOC's compliance and seek enforcement of the Order. Specifically, the Order states that ACLF "shall have the right to seek enforcement of this Order and Agreement, and DOC shall not oppose an application by ACLF to

4

intervene in this action for [enforcement of the Order]." (D.I. 123 at ¶ 48) The law is well-established that an attorney may recover fees for monitoring and enforcing a consent decree. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 558 (1986) (concluding that attorneys' monitoring efforts can be "as necessary to the attainment of adequate relief for their client as was all of their earlier work in the courtroom . . ."); *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 235 (3d Cir. 2008) ("This Court, like other Courts of Appeals, allows fees to be awarded for monitoring and enforcing Court orders and judgments."). This principle extends to claims for attorney's fees brought by a non-party to the civil rights action pursuant to 42 U.S.C. § 1988. *See Wilder v. Berstein*, 965 F.2d 1196, 1202 (2d Cir. 1992) ("A limitation that only parties who prevail in vindicating their own civil rights may be awarded attorneys' fees is not found in the Act and such a reading of § 1988 does not comport with its plain and ordinary meaning.").

Third, DOC argues that the terms of the Order do not provide for attorney's fees. However, paragraph 48 of the Order grants ACLF the right to seek enforcement of the Order "through appropriate sanctions, in the event the Court would find that a material breach of its conditions has occurred." (D.I. 123 at ¶ 48) In the present case, the court concluded that DOC failed to substantially comply with several terms of the Order.[2] (D.I. 147 at ¶¶ 2-6) Although DOC claims that the Order contains no provision expressly permitting an award of attorney's fees, the Third Circuit has held that "[a]ll that matters is whether the agreement expressly

---

[2] DOC suggests in its brief that it substantially complied with the terms of the Order. (D.I. 155 at 4) ("Rather, the evidence cited reflected that DOC was in substantial compliance with the Order . . ."). DOC also characterizes ACLF as "the loser whose reach far exceeded its grasp." (*Id.*) To avoid confusion regarding the court's previous ruling on this issue, the court emphasizes the portion of the Report and Recommendation expressly noting the "State Defendants' failure to achieve substantial compliance on certain specified requirements." (D.I. 144 at 14) The court subsequently concluded that DOC failed to comply with several provisions of the Order and set a new deadline for compliance of February 11, 2014. (D.I. 147 at ¶¶ 4-6; D.I. 148 at ¶ 3)

5

stipulates that the prevailing party's claim for fees is waived. If it does not, then the claim survives." *Torres v. Metro. Life Ins. Co.*, 189 F.3d 331, 334 (3d Cir. 1999). The Order contains no language expressly waiving ACLF's right to seek attorney's fees. Therefore, ACLF may pursue its claim for fees.

In light of the foregoing authority, as well as the language of the Bloothoofd settlement agreement and the Order, ACLF is not barred from seeking attorney's fees under 42 U.S.C. § 1988.

## B. Prevailing Party

ACLF contends that it is the prevailing party because (1) the court granted in part its motion to compel, and (2) ACLF is the successor in interest to the original plaintiff pursuant to the Order, which authorized ACLF to monitor and enforce the Order. (D.I. 151 at 8-9) In response, DOC asserts that ACLF's motion did not result in a material change in the legal relationship of the parties, and the success was not significant enough to justify a fee award. (D.I. 155 at 17-18)

To show that it is the prevailing party, a plaintiff "must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989). A consent decree or settlement is equivalent to a judgment on the merits for purposes of this inquiry, and the Supreme Court has ruled that post-decree monitoring work may be compensable in situations involving a consent decree. *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) ("[T]o qualify as a prevailing party, a civil rights plaintiff . . . must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement"); *Del. Valley*, 478 U.S. at 558 (concluding that attorneys' monitoring efforts can be

6

"as necessary to the attainment of adequate relief for their client as was all of their earlier work in the courtroom . . .").

Although a plaintiff need not succeed on all claims to be a prevailing party, a party's "purely technical or *de minimis*" success is insufficient to establish prevailing party status under § 1988. *Texas State Teachers Ass'n*, 489 U.S. at 792; *Student Pub. Interest Research Group v. AT&T Bell*, 842 F.2d 1436, 1455 (3d Cir. 1988). To achieve prevailing party status, the plaintiff must realize some of the benefit the parties sought in bringing the suit. *Bagby v. Beal*, 606 F.2d 411, 415 (3d Cir. 1979) (quoting *Nadeau*, 581 F.2d at 278-79). Moreover, a change in the legal relationship of the parties must be the product of judicial action and not the voluntary action of the defendant. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598, 605-06 (2001).[3]

In the present case, ACLF[4] became a prevailing party upon entry of the Order on September 19, 2011, which charged ACLF with monitoring and enforcing the terms of the Order. (D.I. 155 at 15) ("The defense does not dispute that the consent decree here materially altered the legal relationship of the parties."). No additional change in the parties' legal relationship is required to establish ACLF's status as a prevailing party. *See Del. Valley*, 478 U.S. at 558-59 ("Protection of the full scope of relief afforded by the consent decree was thus crucial to safeguard the interests asserted . . . and enforcement of the decree . . . involved the type

---

[3] The facts of the Supreme Court's decision in *Buckhannon* are distinguishable from the matter presently before the court because no consent decree was entered in that case prior to the legislature's voluntary repeal of the disputed statute. *Buckhannon*, 532 U.S. at 605. In contrast, the Order entered in the present matter constitutes a judicially sanctioned change in the parties' relationship that was absent in *Buckhannon*.

[4] For the reasons previously stated in § IV.A, *supra*, ACLF is the successor-in-interest to Bloothoofd, the original plaintiff in the civil rights action. The Order was executed by ACLF and expressly charged ACLF with monitoring and enforcing its terms. Therefore, ACLF is a prevailing party.

7

of work which is properly compensable . . .");[5] *Johnson v. City of Tulsa, Okla.*, 489 F.3d 1089, 1108-09 (10th Cir. 2007) ("[W]e cannot accept the proposition that attorney fees for post-decree efforts are compensable only if they result in a judicially sanctioned change in the parties' legal relationship. The Decree itself was such a change, and attorney fees incurred for reasonable efforts to enforce that change – that is, protect the fruits of the Decree – are compensable.").

Moreover, ACLF achieved the desired result by filing its motion to compel because the court's ruling required DOC to take specific actions to comply with certain provisions of the Order by a newly established deadline. (D.I. 147; D.I. 148) The record in the present matter establishes that it was necessary for ACLF to file the motion to compel to enforce the terms of the Order after DOC stopped communicating with ACLF to resolve outstanding issues without court intervention. (Oct. 2013 Flash Drive at Exs. 58-60) Pursuant to the terms of the Order, ACLF was responsible for ensuring that the requirements of the Order were satisfied. (D.I. 123 at ¶¶ 47-48) When DOC terminated communications with ACLF, ACLF continued to fulfill its responsibilities under the express terms of the Order by filing the motion to compel. (D.I. 123 at ¶48) ACLF achieved substantial success in enforcing a number of the outstanding requirements, as evidenced by the court's rulings. (D.I. 144; D.I. 147) Therefore, ACLF achieved more than purely technical success, solidifying its status as a prevailing party.

The fact that ACLF did not prevail on all issues raised in the motion to compel is immaterial to whether it is a prevailing party, but is instead considered when addressing the amount of the appropriate fee. *Student Pub. Interest*, 842 F.2d at 1455. A plaintiff's limited

---

[5] In *Delaware Valley*, the Supreme Court applied the provisions of the Clean Air Act, and not 42 U.S.C. § 1988. However, the Supreme Court expressly stated that the Clean Air Act's fee provision was intended to serve the same purpose as the fee provision in 42 U.S.C. § 1988, and cited with approval several cases applying § 1988 that had awarded attorney's fees for post-judgment monitoring of consent decrees, stating that the fee provisions of the two statutes should be interpreted in the same manner. *See Del. Valley*, 478 U.S. at 559.

8

success in monitoring or enforcing a consent decree affects only the reasonableness of the amount of the fee award, and not whether a fee should be awarded at all. *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 626-27 (6th Cir. 2013). The court addresses the reasonableness of the fee award at § IV.C, *infra*.

DOC alleges that ACLF is not a prevailing party because the accusations of bad faith against DOC were rejected by the court.[6] As previously stated, a prevailing party may be a party who obtained a consent decree and subsequently seeks fees for post-decree monitoring work, so long as the action taken is necessary to enforce the prior order. *Del. Valley*, 478 U.S. at 558. No finding regarding bad faith is necessary to conduct this analysis.[7]

## C.  Amount of Attorney's Fees

Pursuant to 42 U.S.C. § 1988, attorney's fee awards are calculated based on the lodestar, which is equivalent to the appropriate hourly rate multiplied by the reasonable amount of hours

---

[6] DOC's brief draws distinctions between the various requirements of the Order, classifying some as more important than others, in the absence of any facts or supporting authorities for such comparisons. (D.I. 155 at 3) ("Of the handful of issues as to interpretation that were left for the Court to consider on review of the Report and Recommendations, only the staffing issue involved a clear impact on conditions at the institution."). DOC dismisses the areas in which it did not achieve substantial compliance as "housekeeping matters" requiring "comparatively trivial interpretive rulings." (*Id.* at 4-5) The Order itself does not draw such distinctions, and the substantive allegations of sexual abuse of female inmates averred in the underlying action highlight the importance of each requirement and the reasons the parties jointly considered each requirement to be worthy of inclusion in the September 19, 2011 Order. The court further notes that, contrary to DOC's contentions, ACLF never pressed the issue of bad faith and willful noncompliance against DOC. (D.I. 124; 10/8/13 Tr. at 71:1-4) ("As to Judge Robinson's other question, whether or not DOC has been working diligently, reasonably and in good faith, as I said the last time when we were here, I addressed that only because Judge Robinson says we have to."). The court addressed the issue of bad faith in its Report and Recommendation in accordance with the referral order, which required the court to determine whether DOC "is in substantial compliance with the order or working diligently, reasonably and in good faith toward that end." (D.I. 132)

[7] There is no textual support in the Order for DOC's contention that the Order's general reference to "sanctions" in the enforcement provision is limited to Rule 11 sanctions. Section 1988, unlike Rule 11, does not require a finding of misconduct, and bad faith has no bearing on the § 1988 analysis.

9

expended. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). The lodestar is presumed to be the reasonable fee, but a court may exercise its discretion to adjust this figure upward or downward if the lodestar is unreasonable. *City of Burlington v. Dague*, 505 U.S. 557, 559-60 (1992); *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *McKenna v. City of Phila.*, 582 F.3d 447, 455 (3d Cir. 2009).

The reasonable rate is a factual question determined by the evidence in the record, including evidence of prevailing market rates in the community. *See Washington v. Phila. County Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996). Initially, the plaintiff bears the burden of establishing the reasonable market rate with evidence beyond his attorney's affidavit. *Smith v. Phila. Hous. Auth.*, 107 F.3d 223, 225 n.2 (3d Cir. 1997) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). If the defendant fails to provide evidence to contest the plaintiff's evidence, then attorney's fees must be awarded at the plaintiff's requested rate. *Washington*, 89 F.3d at 1036.

ACLF has met its burden regarding the reasonableness of the rate by providing declarations from both attorneys representing ACLF in this matter, as well as a declaration from another attorney regarding the range of prevailing billing rates charged in Delaware by attorneys of similar skill and experience. (D.I. 152; D.I. 153; D.I. 154); *see also Smith*, 107 F.3d at 225 n.2 (quoting *Blum*, 465 U.S. at 895 n.11). DOC has not contested, or presented any evidence challenging, the reasonableness of ACLF's requested rates.[8] A court may not *sua sponte* reduce a request for attorney's fees. *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 721 (3d Cir. 1989) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)) ("[T]he district court retains a

---

[8] DOC alludes to "outrageously excessive" fees in footnote 21 of its answering brief in the context of certain case authorities, but it does not challenge the amount of fees requested by ACLF. (D.I. 155, n.21)

10

great deal of discretion in deciding what a reasonable fee award is, so long as any reduction is based on objections actually raised by the adverse party."). Therefore, the court must award attorney's fees at ACLF's requested rate of $600 an hour.

Once the court has determined the reasonable rate, it must establish the appropriate number of hours by reviewing documentation of the time spent by the attorneys performing specific activities. *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 361 (3d Cir. 2001). Compensable activities may include "background research and reading complex cases, productive attorney discussions and strategy sessions, negotiations, routine activities such as making telephone calls and reading mail related to the case, monitoring and enforcing the favorable judgment, and even preparing and litigating the request for attorneys' fees." *Tobin v. Gordon*, 614 F. Supp. 2d 514, 521 (D. Del. 2009) (quoting *Posa v. City of E. Orange*, 2005 WL 2205786, *4 (D.N.J. Sept. 8, 2005)). The prevailing party must establish that those hours were "reasonably expended," and the court may exclude from the lodestar calculation unnecessary hours or hours that lack proper documentation. *Hensley*, 461 U.S. at 433-34; *see also Joseph A. by Wolfe v. N.M. Dep't of Human Servs.*, 28 F.3d 1056, 1060 (10th Cir. 1994).

A plaintiff's ability to recover fees under § 1988 is based on the scope of the plaintiff's success. *Hensley*, 461 U.S. at 433. An attorney's work on unsuccessful claims not related to the claims on which the attorney succeeded is not compensable, because such work "cannot be deemed to have been expended in pursuit of the ultimate result achieved." *Id.* at 434-35. To determine whether unsuccessful claims are sufficiently related to claims on which a plaintiff prevailed for purposes of including the work in the fee award, the court must consider the extent to which the successful and unsuccessful claims "involve a common core of facts or [are] based on related legal theories." *Id.* at 435. "There is no precise rule or formula for making these

11

determinations," and that the district court "necessarily has discretion in making this equitable judgment." *Id.* at 436.

ACLF attorneys Marion M. Quirk ("Quirk") and Richard H. Morse ("Morse") submitted their itemized records indicating the date legal work was performed, a description of the work performed, and the number of hours spent doing the work. (D.I. 153, Ex. A; D.I. 152, Exs. A, B; D.I. 158 at A65) The work performed is associated with both the motion to compel and the motion for attorney's fees.[9] DOC does not challenge the number of hours expended, and the court does not find any of these hours to be unnecessary or lacking proper documentation. The total amounts of time reasonably expended by ACLF's counsel are as follows:

|  | Hours Spent on the Motion to Compel | Hours Spent on Motion for Attorney's Fees | Hours Spent on the Reply Brief for the Motion for Attorney's Fees |
|---|---|---|---|
| Quirk | 76.1 | 4.2 | 4.2 |
| Morse | 118.6 | 20.4 | 23.7 |
| **TOTAL** | **194.7** | **24.6** | **27.9** |

Applying the $600 rate to the number of hours expended, the lodestar amount for the motion to compel is $116,820 and the lodestar amount for the motion for attorney's fees is $31,500.

To account for the issues on which ACLF was unsuccessful, ACLF proposes a twenty percent reduction of the fees for the motion to compel to reflect the eight out of more than forty total requirements on which DOC ultimately prevailed. (D.I. 151 at 10) The Supreme Court has

---

[9] A party who is awarded attorney's fees may also recover for time spent on the fee application. *See Planned Parenthood of Cent. N.J. v. Attorney Gen. of the State of N.J.*, 297 F.3d 253, 268 (3d Cir. 2002). DOC does not contest the amount of fees requested by ACLF in conjunction with briefing on the motion for attorney's fees, and therefore, the court has no discretion to reduce the amount requested. *Bell*, 884 F.2d at 721 (citing *Hensley*, 461 U.S. at 437). For these reasons, I recommend that the court grant ACLF attorney's fees relating to the motion for fees in the amount of $31,500.

12

cautioned against taking a mathematical approach to this analysis by comparing the total number of issues in the case with those actually prevailed upon. *See Hensley*, 461 U.S. at 435 n.11. However, a twenty percent reduction in fees for the motion to compel is warranted in the present case because it accurately reflects the degree of success obtained,[10] regardless of the mathematical breakdown of each issue. This is particularly true in light of the fact that DOC did not object to the amount of fees requested in connection with the motion to compel. Therefore, I recommend that the court award attorney's fees to ACLF in the requested amount of $124,956 for the motion to compel and motion for attorney's fees.

### D. Costs

As part of the inquiry regarding attorney's fees, a prevailing party may also be awarded costs. *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995). The record reflects that Quirk had a total of $10.14 in costs, and Morse had a total of $381.92 in costs in connection with the motion to compel. (D.I. 153, Ex. A; D.I. 152, Ex. A) As with the attorney's fees, ACLF suggests a twenty percent reduction of costs for a total of $313, and DOC has not challenged the amount of the request. For the reasons previously stated in connection with the request for attorney's fees, I recommend that the court grant ACLF costs in the requested amount of $313. Consequently, I recommend that the court award ACLF attorney's fees and costs in the total amount of $125,269.

---

[10] As previously stated in § IV.B, *supra*, the Report and Recommendation and the Memorandum Order illustrate the necessity of ACLF's monitoring and enforcement efforts because the court ultimately determined that DOC had failed to comply with several of the requirements. (D.I. 147 at ¶¶ 3-6) After multiple extensions of the deadline and failed attempts to resolve these issues without court intervention, ACLF's efforts were necessary to enforce the requirements set forth in the September 19, 2011 Order. *See Del. Valley*, 478 U.S. at 559; *see also Binta B.*, 710 F.3d at 625.

13

## V. CONCLUSION

For the foregoing reasons, I recommend that the court GRANT ACLF's Motion for Attorney's Fees and Costs and award ACLF attorney's fees and costs in the amount of $125,269.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available at http://www.ded.uscourts.gov/court-info/local-rules-and-orders/general-orders.

Dated: September 17, 2014

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE

14